STATE of Minnesota, Respondent,

v.

Michael E. ANDERSON, Appellant.

No. C4-85-1963.

Court of Appeals of Minnesota.

July 29, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Ann Remington, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant, Michael Anderson, appeals from judgment of conviction of three counts of aggravated robbery and one count of felon in possession of a pistol. He was found guilty by a jury of the robbery counts and was tried by the court and found guilty of the pistol possession charge. Appellant claims that (1) the initial stop of his car was unconstitutional; (2) the lineup at which witnesses identified him was impermissibly suggestive; (3) there was insufficient evidence to prove identity; (4) references at trial to appellant's incarceration denied him a fair trial; and (5) the trial court erred in not giving a lesser included offense instruction. We affirm the conviction.

## FACTS

Two drug stores were robbed within twenty minutes of each other on April 19, 1985. Supplee's Community Drug in Wayzata was robbed at about 7:55 p.m. The pharmacist, John McNeely, was standing in an aisle talking with two customers when he was interrupted by a man carrying a sawed-off shotgun. McNeely turned and looked over his shoulder as the man repeated his request for McNeely to get on the floor, which McNeely did. The two customers ran from the store.

Another man (later identified as Daniel Nelson) asked Jennifer Kjos, the cashier, to give him the money in the cash register, which she did. After she did this, she remained crouched down and did not see the men leave. The robbers took no drugs, only money. As the robbers left, McNeely heard a third voice, higher pitched and different from the other two robbers' voices, call out from the getaway car. He observed the front of this car in the dark with its headlights shining.

Long Lake Snyder Drug was robbed of money and drugs at about 8:20 p.m. Rosemary Rosdahl, the pharmacist, was startled by a man in a plaid shirt and a baseball cap, carrying a sawed-off shotgun. The man ordered her to the floor in the pharmacy area where she was working and she complied. This man then ordered a clerk, Lorna St. John, to lie face down on the floor in the pharmacy area. A second man, using a buck knife, brought two other clerks, Dawn Shandley and Jennifer Thurk, to the area and forced them to lie down. No one else was in the store at the time.

The two men ordered Rosdahl to get various drugs for them, which she did. The man with the shotgun examined the drugs and put them into a large duffle bag. Next, the men demanded money and Rosdahl opened a cash register after which she got back down on the floor. The man with the shotgun brought Thurk to another cash register at the front of the store, ordered her to open it, and took money, ordered Thurk to lie down on the floor and made her promise to stay there. Before they

left, one of the robbers instructed the other three women to wait on the floor for five minutes, threatening that if they moved, "four dead bodies would probably matter as much to them as one."

During the robbery, Carolyn Jobin and her eight-year-old daughter entered the store. The man with the shotgun ordered them to "hit" the floor. When the man with the shotgun saw Jobin looking at him, he pointed the gun at them and directed them to keep their heads down. As the men left, one of them grabbed Jobin's purse, which lay on the floor next to her.

At about 8:00 p.m., while patrolling in separate marked squad cars, officers Bruce Anderson and Bradley Johnson received radio dispatches that an armed robbery had occurred at Community Drug. It was reported that two persons had been involved and that a small white car, possibly a Chevrolet with no front grill, had been seen leaving the scene of the robbery. The description of the car was later revised to an orange car of unspecified make with no front grill.

At about 8:20 p.m., officers Anderson and Johnson received a radio dispatch of an armed robbery in progress at the Snyder Drug in Long Lake. Officer Anderson arrived at the scene within one minute of the dispatch. He could not see any cars or people in front of the store or anyone inside the store. He was then informed by the Sheriff's department that the suspects had exited out the front door but had re-entered the store.

Officer Anderson next received a dispatch that a vehicle was turning from the alley behind Snyder Drug onto Lake Street. Officer Anderson then saw an orange two-door car traveling southbound on Lake Street about three or four car lengths north of the building containing Snyder Drug. Officer Anderson did not see the car actually turn from the alley onto Lake Street. Officer Anderson followed the car and saw that it was an orange two-door, but could not see the front grill. After officer Anderson radioed for assistance, Johnson fell in behind his car. They followed the orange car for about two miles before attempting to stop it. During this time the car stopped for the only stop sign it came to, did not exceed the posted speed limit, and exhibited no erratic driving. The officers stated that they were waiting for the car to pass out of the residential area into a less populated area with adequate street lights.

The officers activated their red lights and attempted to stop the car. The car stopped momentarily and the officers ordered the suspects out of the car. The suspects then fled, hitting Johnson's squad car. The passenger, later identified as Nelson, threw something out the car's window. The officers finally stopped the car after Johnson's squad and the car made contact three or four times. Both suspects ran from the car, but were ultimately apprehended that evening.

In their searches, the officers found $336, small change and two .20 gauge shotgun slugs in appellant's pockets. A white duffle bag with which Nelson had absconded contained a dark red purse, later identified by Jobin as belonging to her, a carton of cigarettes, $177 in cash and 25 to 30 pharmaceutical bottles with labels from Snyder Drug. Down the road, the officers found three separate parts of a sawed-off .20 gauge shotgun in the grass. A buck knife was recovered near where the duffle bag had been dropped. A television set with a Snyder sticker on it was observed in the back seat of appellant's car. A plaid shirt was found five feet from where Nelson had been hiding in the woods and $61 was found in his pockets.

## ISSUES

1. Did the officers have a particularized and objective basis for the stop?

2. Was the lineup impermissibly suggestive?

3. Was the evidence sufficient to prove identity?

4. Did the trial court err in not giving a less included offense instruction?

5. Did references at trial to appellant's incarceration deny him a fair trial?

## ANALYSIS

### I

*Basis for the stop*

■ A stop is lawful if the officer can articulate a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *State v. McKinley*, 305 Minn. 297, 304, 232 N.W.2d 906, 911 (1975).

■ Appellant claims that the description of the suspects and the vehicle was too general and conflicting to support the stop. First the vehicle was described as a white Chevrolet with no front grill. Later the vehicle was described as an orange two-door with no front grill. In fact, appellant's car was a Plymouth Volare or a Dodge Aspen. Also, the officers were unable to see the front of the car until after they stopped it. We hold that nevertheless the officers had an objective basis to suspect the occupants of the car.

*State v. Ritchie*, 379 N.W.2d 550 (Minn. Ct.App.1985) reversed a trial court's finding of no basis for a stop. This court held that sufficient basis for the stop was provided by (1) arriving at the scene within three to four minutes of receiving a call of a crime in progress; (2) dispatch supplied the officers with a description of the van and the suspects; and (3) the van was intercepted "within the close vicinity" of the scene of the crime. *Id.* at 553. Here, one of the officers arrived at the scene within one minute, a description of the vehicle which included some particulars as to an unusual color and number of doors was provided, and the vehicle was first seen close to the crime scene. We hold that this constituted sufficient basis for the stop.

Appellant's flight from the officers when initially stopped is an additional factor which justified the stop that led to appellant's arrest and seizure of certain evidence. *See City of St. Paul v. Vaughn*, 306 Minn. 337, 343, 237 N.W.2d 365, 369 (1975).

### II

*Lineup identification*

Appellant claims that the lineup violated his fourteenth amendment due process rights because it was "so unnecessarily suggestive as to create a 'very substantial likelihood of irreparable misidentification.'" *State v. Montjoy*, 366 N.W.2d 103, 106 (Minn.1985) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).

■ We have reviewed the photographic record of the lineup and hold that it was not unnecessarily suggestive. The lineup consisted of five white men. All had some facial hair, and three had full beards, as did appellant.

■ Appellant claims that the lineup was overly suggestive because a law enforcement officer stated to the participants, "Gentlemen, stop fooling around, this is important to one of you here." We explicitly disapprove of that remark. If heard by any witnesses brought to the lineup, it would confirm in that person's mind that the suspect is one of the persons in the lineup. Witnesses are not to be told by law enforcement that a known suspect is in the lineup. When done, it impermissibly reinforces the witness's decision to go ahead and identify someone even if they are not sure. Proper police procedure may at times dictate a lineup when, unknown to the witnesses, no known suspects are in the lineup. This may be done specifically to test the credibility of an uncertain witness. However, appellant concedes that it is unknown whether any of the witnesses actually heard the remark. Thus, while holding that the remark was improper, and while holding that under certain circumstances that remark could so taint a lineup as to mandate a new trial, we do not find on these facts reversible error.

## III

### *Sufficiency of identity evidence*

Appellant claims that the identification evidence was insufficient to support his convictions, especially for the Community Drug robbery.

In reviewing the evidence, this court will view the evidence in the light most favorable to the state and determine only whether reasonable evidence supports the jury's verdict. *State v. Wahlberg*, 296 N.W.2d 408 (Minn.1980); *State v. Turnipseed*, 297 N.W.2d 308 (Minn.1980) (the reviewing court must assume that the jury believed all the state's witnesses and disbelieved all contradictory testimony).

Appellant claims that the eyewitness identifications were unreliable because they were based on limited observation, relying on a statement in *State v. Spann*, 287 N.W.2d 406, 407–408 (Minn.1979):

> We note, however, our belief that eye witness identification made upon fleeting or limited observation at the time of a crime is not reliable and in the absence of corroboration should not be the basis for conviction.

Appellant particularly questions the identification of him as one of the Community Drug robbers. McNeely, the Community Drug pharmacist, identified appellant as the robber with the shotgun. He was able to see the robber for a brief period before he was forced to the floor. He did not obtain any drugs or open any cash registers for the robbers, as did the Snyder pharmacist, so he had no further opportunity to view them.

Appellant also claims that the two robberies were different. Appellant points to the following facts. Only money was taken from Community Drug, while money, a television, and drugs were taken from Snyder Drug. Appellant notes there was a third man involved at the Community Drug robbery, but only two were stopped for the Snyder Drug robbery. Two customers were permitted to leave Community Drug, while at Snyder's the robbers forced Jobin to stay and keep her head down. Also, the amount of cash recovered was less than the total reported lost from each store ($613 from Community Drug and $518 from Snyder Drug). Appellant argues that these differences limit the probability that the two robberies were committed by the same men.

■ These factors are legitimate considerations for a jury on the issue of identity. However, they simply relate to the credibility of the evidence on identity. The listed differences in the two robberies do not prove that they could not have been committed by the same people. The differences only go to weight of the evidence and, although certainly can be the subject of proper closing argument by defense counsel, are not determinative as a matter of law that appellant could be involved in one robbery but not the other. The jury was presented with the facts impeaching the credibility of appellant's identification, and was free to believe or disbelieve them.

## IV

### *Lesser included offense instruction*

Appellant's counsel requested submission of theft from person as a lesser included offense of the aggravated robbery of Jobin. The trial court denied the request.

> In determining what, if any, lesser degrees should be submitted, the test should be whether the evidence would reasonably support a conviction of the lesser degree and at the same time is such that a finding of not guilty of the greater offense would be justified.

*State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975).

■ Appellant argues that there is a rational basis for finding that appellant did not use force or the threat of imminent force against Jobin to overcome her resistance and compel her acquiescence in the taking of her purse, as required by Minn. Stat. § 609.245 (1984), but instead intentionally took Jobin's purse without her consent as defined by Minn.Stat. § 609.52 subd. 2(1). We disagree. We have reviewed the record and it reveals no dispute

that the robbers used armed force in the robberies. This element distinguishes aggravated robbery from theft from the person. We agree with respondent that the initial use of the shotgun to force Jobin and her daughter to the floor carried over minutes later to the taking of Jobin's purse.

## V

*Fair Trial*

Appellant claims that he was denied a fair trial by references to the fact that he was in custody. This court and the supreme court have recognized that references to incarceration can be prejudicial. *State v. Hjerstrom*, 287 N.W.2d 625, 628 (Minn.1979); *State v. Halverson*, 381 N.W.2d 40 (Minn.Ct.App.1986). We decline, however, to reverse on this point.

The first reference was to the fact that appellant had worn prison clothes at the lineup. Appellant's trial counsel objected and the trial court ordered the testimony stricken and instructed the jury to disregard it. In view of the sustained objection and the corrective actions, we cannot say appellant was denied a fair trial by this reference.

The other reference occurred when, on direct examination by the state, a detective outlined the procedures for conducting an in-custody lineup:

> The procedure, first of all, is to notify if the person that you are—the suspect in the matter is in custody, the procedure is to notify the jail so that they can make preparations with advance time in order to find other individuals that may look similar to the suspect. * * * The witnesses are advised to come, in this particular case were advised to come to the Sheriff's Criminal Division in the courthouse. They were then escorted to a common area of the jail.

Appellant's trial counsel moved for a mistrial due to these references,[1] and the trial court denied the motion, stating that the jury was well aware that appellant had been arrested, and that it would be expected that he would remain in custody for at least a few days after arrest for three aggravated robberies. The trial court offered to instruct the jury that "no inference of guilt is to be drawn from the mere fact that the defendant has been taken into custody and charged with a violation of law." Counsel declined to permit this instruction.

Although these references to incarceration were improper and inadmissible, they were not emphasized, appear to have been inadvertent, the trial court offered corrective instructions both times, properly instructed the jury on the first occasion and offered appellant's counsel a corrective instruction on the second reference. We also note that appellant's trial counsel himself referred to the jail uniforms worn by the men in the lineup while cross-examining a detective. Taking the two references, the totality of the circumstances and the trial court's actions as a whole, we decline to find reversible error on this issue.

## DECISION

The trial court did not err in ruling that the stop was valid. The lineup was not impermissibly suggestive. The evidence was sufficient to prove identity. The trial court did not err in not giving a lesser included offense instruction. References to appellant's incarceration, although improper, did not mandate a new trial.

Affirmed.

---

1. Appellant's trial counsel explained that he did not object to this reference at the time it was made because "if I objected once more to any hint he was in custody would highlight it only further."