LAWRENCE v BAY OSTEOPATHIC HOSPITAL, INC

Docket No. 103178. Submitted October 20, 1988, at Lansing. Decided February 21, 1989.

Karl Harold Lawrence suffered a cardiac arrest during his admission to Bay Osteopathic Hospital in October of 1983. Mr. Lawrence also suffered brain damage when the hospital staff and others allegedly failed to adequately respond to the cardiac arrest. Evelyn Lawrence, individually and as guardian of Karl Lawrence, an incompetent person, and their nine children filed a medical malpractice action against Bay Osteopathic Hospital, Inc., and others in Bay Circuit Court. Mr. Lawrence died in 1987, and his estate was substituted as a plaintiff in his stead. During pretrial proceedings, two attorneys for the defendants met with Dr. Woolliscroft, one of Mr. Lawrence's treating physicians at the University of Michigan Hospital where Mr. Lawrence had been transferred after his discharge from Bay Osteopathic Hospital. Plaintiffs intended to call Dr. Woolliscroft as an expert witness, and the meeting between the defense attorneys and Dr. Woolliscroft was without the permission of plaintiffs' counsel. At the time of that meeting, the defense attorneys had not been informed that Dr. Woolliscroft was to be an expert witness for plaintiffs. At a subsequent deposition, Dr. Woolliscroft testified that the conference with the defense attorneys made no difference in his thoughts or opinions about the case and that the attorneys had not tried to improperly influence him in any way. Plaintiffs filed a motion for default judgment, invocation of sanctions, and for extension of time to name expert witnesses on the basis that the meeting between Dr. Woolliscroft and the defense attorneys constituted a willful and intentional breach of the attorney-client relationship and the doctor-patient relationship, was an invasion of plaintiffs' attorney's work product, and was unethical. The court, William J. Caprathe, J., found that the attorneys in question had violated the physician-patient privilege and the attorney-client

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers § 169.

See the Index to Annotations under Attorney or Assistance of Attorney; Physician-Patient Privilege.

privilege and had improperly sought to obtain the work product of plaintiffs' counsel. The court also imposed sanctions upon counsel and allowed plaintiffs additional time to name an expert witness. Defendants Dhana Shrestha, M.D., and Dhana Shrestha, M.D., P.C., appealed.

The Court of Appeals *held:*

1. Ex parte interviews by defense counsel of a plaintiff's treating physician without the plaintiff's consent and the presence of plaintiff's counsel at any face-to-face meeting between defense counsel and plaintiff's treating physician are prohibited. The trial court did not err in concluding that defense counsel acted improperly in conducting an ex parte interview of Dr. Woolliscroft without plaintiff's consent.

2. The imposition of sanctions against defendants by the trial court was not warranted because the state of the law was changing at the time defendants contacted Dr. Woolliscroft.

Affirmed in part and reversed in part.

MacKenzie, J., agreed that sanctions should not have been imposed in this case but dissented from that portion of the majority's opinion which finds that ex parte interviews by defense counsel with plaintiff's treating physician are prohibited in the absence of consent to the interview by plaintiff's counsel. She would find that the physician-patient privilege was waived in this case. She would also hold that the attorney-client privilege could not be violated by the interview between defendants' attorneys and Dr. Woolliscroft and that the record does not support a finding that any work product of plaintiffs' attorney was disclosed.

PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — EX PARTE INTERVIEWS.

Ex parte interviews by defense counsel of a plaintiff's treating physician without the plaintiff's consent and the presence of plaintiff's counsel at any face-to-face meeting between defense counsel and plaintiff's treating physician are prohibited.

*Patterson, Gruber, Kennedy & Gill* (by *Brian M. Kennedy*), for plaintiffs.

*Smith & Brooker, P.C.* (by *Richard G. Smith* and *Jonathan C. Martin*), for defendants.

Before: MICHAEL J. KELLY, P.J., and MACKENZIE and S. B. MILLER,* JJ.

S. B. MILLER, J. Defendants Dhana Shrestha, M.D. and Dhana Shrestha, M.D., P.C., appeal as of right from an order and that portion of a judgment issued by Bay Circuit Judge William J. Caprathe imposing sanctions upon defendants Shrestha and Bay Osteopathic Hospital.

The issue on appeal is whether the trial court erred in determining that defense counsel acted improperly in conducting an ex parte interview of Dr. Woolliscroft, decedent's treating physician subsequent to defendants' alleged malpractice, without plaintiffs' consent and without the permission of plaintiffs' attorney.

The recent case of *Jordan v Sinai Hospital of Detroit, Inc,* 171 Mich App 328; 429 NW2d 891 (1988), examined the issue of ex parte interviews of treating physicians by opposing counsel. The parties in *Jordan* presented the same arguments advanced by the parties in the present case. We concur with the reasoning in *Jordan* and agree with its holding that ex parte interviews by defense counsel of a plaintiff's treating physician without the plaintiff's consent and the presence of plaintiff's counsel at any face-to-face meeting between defense counsel and plaintiff's treating physician are prohibited.

We hold that the trial court in the instant case did not err in concluding that defense counsel acted improperly in conducting an ex parte interview of Dr. Woolliscroft without plaintiffs' consent. However, we believe that the imposition of sanctions against defendants by the trial court was not warranted in this case.

At the time defendants contacted Dr. Woollis-

* Circuit judge, sitting on the Court of Appeals by assignment.

croft, the state of the law was changing. Case law suggested that defense counsel's ex parte interview of a plaintiff's treating physician was not necessarily inappropriate. See, e.g., *Melynchenko v Clay,* 152 Mich App 193; 393 NW2d 589 (1986), lv den 426 Mich 875 (1986). This Court in *Jordan* noted that the issue was one of first impression since the enactment of the new Michigan Court Rules. Therefore, we reverse the trial court's order as to the imposition of sanctions against defendants Shrestha and Bay Osteopathic Hospital.

Affirmed in part and reversed in part.

MICHAEL J. KELLY, P.J., concurred.

MACKENZIE, J. *(dissenting in part).* I agree with the majority that discovery procedures and case law relating thereto have been changing recently in Michigan. Accordingly, and regardless of the ultimate outcome of the presently uncertain substantive law relating to the issue, I concur with the conclusion of the majority that sanctions against defendants should not be imposed in this case.

I dissent, however, from the majority's agreement with the panel's holding in *Jordan v Sinai Hospital of Detroit, Inc,* 171 Mich App 328; 429 NW2d 891 (1988), that ex parte interviews by defense counsel with plaintiff's treating physician are prohibited in the absence of consent to the interview by plaintiff's counsel.

The law prior to the adoption of the Michigan Court Rules of 1985 was consistent in permitting defense counsel to have ex parte interviews with the plaintiff's treating physicians. In *Gailitis v Bassett,* 5 Mich App 382; 146 NW2d 708 (1966), this Court found "no error in authorizing defendant's counsel to interview plaintiff's physician." 5

Mich App 384. *Jordan, supra* at 334, indicates that
this Court relied on *Gailitis* to allow the defen-
dants to interview the treating physicians in
*Lusko v Rubenfire,* unpublished order of the Court
of Appeals, released October 31, 1983 (Docket Nos.
71222, 71223). *Lusko* involved a peremptory order
to direct the trial court in a case where the
plaintiff had not asserted the physician-patient
privilege. The panel noted:

> "Absent assertion of a valid privilege, a party
> has the right to interview any witness, *Socha v
> Passino,* 405 Mich 458 [275 NW2d 243] (1979),
> albeit the witness may choose not to consent to an
> interview, but see Code of Professional Responsibil-
> ity, DR7-109(B), in which event resort must be had
> to the compulsory procedures of Chapter 30 of the
> General Court Rules."

Moreover, as a practical matter, ex parte inter-
views were routine procedure under the former
general court rules. The basis for this practice was
the right of a party to prepare for trial by inter-
viewing any witness absent the assertion of a valid
privilege. *Socha, supra.*

The *Jordan* panel ultimately concluded that
*Gailitis* did not sanction ex parte interviews and
that, even if it did, it has been overruled by the
new court rules. Accepting the *Jordan* view that
the adoption of the new court rules makes the
issue treated therein a case of first impression, an
analysis of its reasoning must start by examining
the court rules.

Initially it should be observed that nothing in
the new court rules suggests that they were in-
tended to restrict discovery formerly allowed. The
entire thrust of the new court rules is to further
liberalize Michigan's already open discovery pro-
cess. MCR 2.314 specifically authorizes discovery of

medical records and other tangible evidence re-
garding the mental or physical condition of a
party; it does not address the question of either
depositions or preparation for depositions. Under
the new Michigan Court Rules, the good cause
requirement for pretrial discovery has been aban-
doned, and all things, not privileged, relevant to
the subject matter involved in the pending action
are freely discoverable upon request. *Davis v
O'Brien,* 152 Mich App 495; 393 NW2d 914 (1986),
lv den 426 Mich 869 (1986). See also MCR 2.302
relating to the scope of discovery.

The statutory physician-patient privilege is nar-
row.[1] The broader language of MCR 2.314 provides
in relevant part:

> (B) Privilege; Assertion; Waiver; Effects.
>
> (1) A party who has a valid privilege may assert
> the privilege and prevent discovery of medical
> information relating to his or her mental or physi-
> cal condition. The privilege must be asserted in

---

[1] The privilege statute, MCL 600.2157; MSA 27A.2157, states:

> No person duly authorized to practice medicine or surgery
> shall be allowed to disclose any information which he may have
> acquired in attending any patient in his professional character,
> and which information was necessary to enable him to pre-
> scribe for such patient as a physician, or to do any act for him
> as a surgeon: Provided, however, That in case such patient
> shall bring an action against any defendant to recover for any
> personal injuries, or for any malpractice, if such plaintiff shall
> produce any physician as a witness in his own behalf, who has
> treated him for such injury, or for any disease or condition,
> with reference to which such malpractice is alleged, he shall be
> deemed to have waived the privilege hereinbefore provided for,
> as to any or all other physicians, who may have treated him for
> such injuries, disease or condition: Provided further, That after
> the decease of such patient, in a contest upon the question of
> admitting the will of such patient to probate, the heirs at law
> of such patient, whether proponents or contestants of his will,
> shall be deemed to be personal representatives of such deceased
> patient for the purpose of waiving the privilege hereinbefore
> created.

the party's written response under MCR 2.310. A privilege not timely asserted is waived in that action, but is not waived for the purposes of any other action.

(2) Unless the court orders otherwise, if a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party's medical history or mental or physical condition.

Both the instant case and *Jordan* involve malpractice actions in which the physical condition of the plaintiff or plaintiff's decedent was crucial. In *Jordan,* the records of the treating physicians' diagnosis and treatment had been made available to all parties when defense counsel filed a motion for informal ex parte meetings with the treating physicians. The plaintiff's response stated that the plaintiff was not asserting the privilege as to medical records or the testimony of the treating physicians. In the present case, interrogatories had been served on plaintiffs, and the treating physicians had been furnished a written authorization[2] for

---

[2] The authorization states:

HOSPITAL OR DOCTORS AUTHORIZATION TO PHOTOCOPY RECORDS

Name of Hospital/Doctor: University Hospital, Ann Arbor, Michigan

Name of Patient: Karl Harold Lawrence

Address: 3421 Lauria Road, Bay City, Michigan

I, the undersigned, hereby authorize any physician or nurse who attended me, or any hospital at which I have been confined, to furnish _____ or Records Disposition Service, 1248 Free Press Building, Detroit, Michigan 48226, with any and all information which may be requested regarding my past or present physical condition and treatment rendered therefor.

providing to defendants plaintiff's medical records when the informal interview with one of the physicians took place. In both cases, defendants had requested production of medical information and documents under MCR 2.310. In both cases, medical records had been furnished.

In neither case had the privilege been asserted in response to such request, but rather the requested records had been produced. The clear language of MCR 2.314(B)(1) provides that "[t]he privilege must be asserted in the party's written response under MCR 2.310. A privilege not timely asserted *is waived in that action.*" While this portion of MCR 2.314(B)(1) appears to be pivotal, it was not considered by the *Jordan* panel or the majority in this case. I would find that under the new rule, MCR 2.314(B)(1), the privilege was waived both in *Jordan* and in this case.

My view finds support in *Schuler v United States,* 113 FRD 518 (WD Mich, 1986). The plaintiffs' decedents in *Schuler* died in an airplane crash. The defendants sought to prove the pilot, one of the plaintiffs' decedents, suffered from medical conditions which affected his judgment resulting in and causing the crash. The defendants requested, and the plaintiffs provided, copies of the pilot's medical records from his treating physicians. Subsequently, one of the defendants sought to depose these physicians and the plaintiffs objected, asserting the physician-patient privilege. The *Schuler* Court concluded that, under Michigan

---

Patient's Signature: Karl Harold Lawrence, a Mentally Incompetent Person, by Evelyn Lawrence, Guardian

Franklin, Petrulis, Bigler, Berry & Johnston
Requesting Firm

By: Bruce E. Bigler.

law, the privilege had been waived and, once waived, could not be reasserted in the action. The Court stated:

> In this case, the state statute and court rules conflict as to the procedures necessary to preserve the physician/patient privilege. The plain language of the statute indicates that the privilege is waived when the plaintiff in a personal injury case produces any physician as a witness at trial to testify as to treatment for such injury. The present Michigan Court Rule, MCR 2.314(B)(1) provides that the privilege must be asserted in a written response to a request to produce, or it is waived for purposes of the action. Although Michigan courts have held, pursuant to the statute, that the privilege cannot be involuntarily waived by failure to assert it prior to trial, the decisions were rendered prior to the inception of the new court rules. *See, Eberle v Savon Food Stores, Inc,* 30 Mich App 496 [186 NW2d 837] (1971).
>
> It is clear that the Michigan Supreme Court intended that MCR 2.314 control the procedures involved in assertion of and waiver of the physician/patient privilege. The rule was promulgated in full awareness of the conflicting statutory provisions and the committee notes indicate that the intent of the rule is to "require[s] a party to decide whether or not to assert the privilege at the discovery stage." MCR 2.314, advisory note. The committee further comments that "if a party does not assert the privilege in response to a request to produce, it is waived." *Id.* In addition to judicial intent in this regard, the general rule is that where a court rule and statute conflict on procedure, the court rule controls. *Schaeffer v Schaeffer,* 106 Mich App 452 [308 NW2d 226] (1981). Moreover, Michigan courts have held that rules of evidence are matters involving judicial practice and procedure and they therefore take precedent over conflicting statutes. *Dahn v Sheets,* 104 Mich App 584 [305 NW2d 547] (1981).
>
> The Court is of the opinion that the court rules

control the procedures for assertion of the privilege and in this instance, the privilege was not timely asserted. Plaintiff Wilson has voluntarily produced medical documents on several occasions without asserting the privilege in writing as required by the court rule. The Court therefore concludes that the physician/patient privilege of decedent Richard Wilson has been waived and the Court further permits defendant Cessna to depose Doctors Brubaker and Aardema and/or call them as witnesses at trial. [113 FRD 520-521.]

*Jordan* makes much of the new court rules giving the plaintiff the opportunity to assert the privilege at any time, but disregards that the privilege can be asserted at any time *unless* it has previously been waived. Moreover, *Jordan* and the instant plaintiffs seem to envision one privilege with respect to records and another privilege with respect to personal interviews. There is, however, but one medical privilege. When plaintiffs, by the authorization, permitted the release of medical records instead of asserting the privilege, the privilege was waived with regard to all subsequent proceedings in the action.

Once a valid privilege has been waived, as in *Jordan* and the instant case, there is no sound reason to deny attorneys an opportunity to interview witnesses in preparation for trial. *Jordan* circumvented this conclusion by ascribing to the physician the role of "fiduciary." Such a characterization is unsound, however. As this Court determined in *Melynchenko v Clay*, 152 Mich App 193, 197-198; 393 NW2d 589 (1986), lv den 426 Mich 875 (1986), any concept of "fiduciary" relationship is subsumed by the physician-patient privilege:

The relation between treating physician and patient, requiring confidence, trust, and good faith,

is founded on the proper diagnosis and treatment of medical problems. Permitting a treating physician to testify with regard to matters traditionally not privileged should have no deleterious effect on his treatment of a patient and should have no chilling effect on a patient's disclosures during the course of their relationship. In this manner, the policies underlying the fiduciary relationship between physician and patient, which plaintiff claims should bar Fleischman's testimony here, and the policies underlying the physician-patient privilege statute, traditionally the only bar to a treating physician's testimony, are closely parallel. Each advances the same interests, and supports the conclusion that *the statute adequately protects the physician-patient relationship.* [Emphasis added.]

Once the privilege has been waived, the physician is like any other witness. His duty to the patient is no greater than that of any other witness: his duty is to tell the truth. *Doe v Eli Lilly & Co, Inc,* 99 FRD 126 (D DC, 1983), a leading case, carefully examines the policies:

As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. See *International Business Machines Corp v Edelstein,* 526 F2d 37, 41-44 (2d Cir, 1975); *Gregory v United States,* 369 F2d 185, 187-88 (DC Cir, 1966); *Edmund J Flynn Co v LaVay,* 431 A2d 543, 551 (DC, 1981); 8 J Wigmore, *Evidence* § 2192 (McNaughton rev ed 1961). Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate con-

ditions the witness alone may impose are satisfied,
e.g., compensation for his time and expertise or
payment of reasonable expenses involved, and
while the Federal Rules of Civil Procedure have
provided certain specific formal methods of acquir-
ing evidence from recalcitrant sources by compul-
sion, they have never been thought to preclude the
use of such venerable, if informal, discovery tech-
niques as the *ex parte* interview of a witness who
is willing to speak. *Hickman v Taylor,* 329 US 495;
67 S Ct 385; 91 L Ed 451 (1947); see *International
Business Machines Corp v Edelstein,* 526 F2d at
43-44; *cf. Gregory v United States,* 369 F2d at 187-
88; *Trans-World Investments v Drobny,* 554 P2d
1148, 1151-52 (Alaska, 1976).

The potential for influencing trial testimony is
inherent in every contact between a prospective
witness and an interlocutor, formal or informal,
and what a litigant may justifiably fear is an
attempt by an adversary at *improper* influence for
which there are sanctions enough if it occurs. See
*Gregory v United States,* 369 F2d at 188. And
there are entirely respectable reasons for conduct-
ing discovery by interview *vice* deposition; it is less
costly and less likely to entail logistical or schedul-
ing problems; it is conducive to spontaneity and
candor in a way depositions can never be; and it is
a cost-efficient means of eliminating non-essential
witnesses from the list completely. Those are the
reasons offered by defendant for what it would do
here but cannot for the physicians' inhibitions
deriving from the privilege of which plaintiffs are
unwilling to relieve them except at deposition.

The medical privilege in the District of Colum-
bia has been codified at D.C. Code, § 14-307, and
provides, in pertinent part, that in both federal
and local courts in the District of Columbia,

"... a physician or surgeon ... may not be
permitted, without the consent of the person af-
flicted, or of his legal representative, to disclose
any information, confidential in its nature, that he
has acquired in attending a client in a professional
capacity and that was necessary to enable him to

act in that capacity, whether the information was obtained from the client or from his family or from the person or persons in charge of him."

D.C. Code Ann. § 14-307 (1981). The statutory purposes are similar to those given for the common law privileges—to promote greater freedom of communication between physician and patient by covering the relationship with a "cloak of confidence" and to prevent disclosure of information concerning the patient which might result in his humiliation, embarrassment, or disgrace. *Wilson v Thornton,* 416 A2d 228, 236 (DC, 1980). The privilege was never intended, however, to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time. *Cf. Edmund J Flynn Co v LaVay,* 431 A2d at 551.

The inchoate threat implicit in refusing or qualifying permission to speak to a witness in possession of privileged information operates to intimidate the witness, who is then placed in the position of withholding or divulging what he knows at his peril, and is itself a species of improper influence. It also enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information is revealed while his own preparation is under no such scrutiny. The Court concludes that it would be an abuse of the privilege to allow it to be used in such a manner which has no relation to the purpose for which it exists.

*Doe* has been adopted, after extensive analysis of nearly all the cases from around the country on point, in *State ex rel Stufflebam v Appelquist,* 694 SW2d 882, 886-888 (Mo App, 1985), and in *Green v Bloodsworth,* 501 A2d 1257, 1258-1259 (Del Super, 1985).

I respectfully suggest that the more cogent reasoning lies on the side of *Doe* and those courts which do not prohibit ex parte interviews. No

physician has any obligation to consent to an interview. See *Klabunde v Stanley,* 384 Mich 276; 181 NW2d 918 (1970). The concern expressed in *Jordan,* that the physician-patient relationship might be chilled out of fear that the physician will reveal irrelevant but highly personal mental and physical health information, seems to be predicated on the dual assumption that defense counsel is likely to seek such irrelevant information (presumably for the purpose, not of trial preparation, but of embarrassing his adversary) and moreover that physicians would cooperate in such fishing expeditions. This assumption of unethical conduct is contrary to what Michigan has long recognized as the elementary principles which govern human behavior, namely, that professionals will be presumed to uphold the ethical standards expected of them by their peers; the burden is on those who believe otherwise to establish the validity of their suspicions by a preponderance of the evidence. *Gailitis, supra* at 384, citing *Wagar v Peak,* 22 Mich 368 (1871).

Plaintiffs further claim, and the trial court held, that the ex parte interview violated plaintiffs' attorney-client privilege. The attorney-client privilege prohibits an attorney from disclosing confidential communications between the attorney and his client. The purpose of the privilege is to allow the client to confide in his attorney secure in the knowledge that the communication will not be disclosed. *Kubiak v Hurr,* 143 Mich App 465; 372 NW2d 341 (1985). The attorney-client privilege could not be violated by the interview between defendants' attorneys and the doctor. Only the attorney can violate the attorney-client privilege by communicating the client's secrets to third parties. Third parties are not bound by the privilege.

Plaintiffs have cited a number of cases for the proposition that communications between plaintiffs' medical expert and plaintiffs' attorney fall within the attorney-client privilege. However, these cases do not apply to the facts of this case. For example, in *Lindsay v Lipson,* 367 Mich 1; 116 NW2d 60 (1962), information obtained by a physician *from the plaintiff* during an examination of the plaintiff performed at the request of her attorney was deemed privileged because, in effect, the information conveyed to the physician was information conveyed by the plaintiff to her attorney. This Court made a similar ruling as to communications by the plaintiffs to the plaintiffs' medical expert in *McCarthy v Belcher,* 128 Mich App 344; 340 NW2d 848 (1983).

The cases of *Lindsay* and *McCarthy* have no application here since the physicians in those cases were physicians to whom the plaintiffs went for examinations for purposes of litigation and not for treatment. In contrast, in the instant case, the doctor was plaintiffs' decedent's treating physician after his discharge from Bay Osteopathic Hospital. The physician was not retained to examine plaintiffs' decedent in conjunction with the litigation.

Plaintiffs also allege and the trial court found that defense counsel's interview with the physician constituted an invasion of their attorney's work product and a violation of the court rules of discovery. The record does not support a finding that any work product of plaintiffs' attorney was disclosed.

The work product of an attorney is personal to the attorney and can be waived by him. If he wishes to disclose his mental impressions or trial strategy to a third party he runs the risk the third party may reveal it, either inadvertently or under examination by an adverse party. Here the record does not disclose any evidence that the interview

with the doctor prejudiced the plaintiff in any way. The doctor testified on deposition that the interview with defense counsel made absolutely no difference in his opinions. At deposition the doctor was asked: "Did it make any difference—did that conference make any difference in your thoughts or opinions that you are going to bring here today?" and the physician answered, "No." I would not find a violation of the attorney's work product privilege under these facts.