G P ENTERPRISES, INC v JACKSON NATIONAL LIFE
INSURANCE COMPANY

Docket No. 131575. Submitted November 9, 1992, at Lansing. Decided
August 26, 1993; approved for publication December 1, 1993, at
9:20 A.M.

G. P. Enterprises, Inc., brought an action in the Oakland Circuit
Court against Jackson National Life Insurance Company, Clifford G. Adams, and Adams, Pavlick & Associates after Jackson
National refused to pay on a policy it had issued through the
other defendants on the life of George Guffrey, a G. P. Enterprises executive, with G. P. Enterprises as beneficiary. The
court, Robert C. Anderson, J., granted summary disposition for
Jackson National, ruling that, under the provisions of the
application for insurance and the insurance policy itself, the
policy had not taken effect before the insured died. G. P.
Enterprises appealed.

The Court of Appeals *held:*

1. A condition for coverage remained unmet at the time of
the insured's death. The application provided that any policy
issued on that application was not to take effect unless, among
other things, the health of the person to be covered remained
as represented in the application and the statements and
answers in the application continued to be true on the date the
policy was received by the applicant. Guffrey's health had
changed between when he successfully completed a physical
examination as part of the application for insurance and when
the policy was received by G. P. Enterprises. Guffrey had been
admitted to a hospital after the physical examination but
before the policy was received by G. P. Enterprises, and the
illness that caused the hospitalization proved fatal shortly after
the policy was received by G. P. Enterprises. In addition, contrary to a requirement stated in the application, Jackson

REFERENCES

Am Jur 2d, Insurance §§ 209, 215, 216.

Provision in life insurance policy excluding or limiting liability if
insured is not in sound health on date or delivery of policy as
confined to change in condition after making or acceptance of
application. 60 ALR2d 1429.

National was not given written notification of the change in Guffrey's health before delivery of the policy.

2. *The trial court did not abuse its discretion in denying* G. P. Enterprises' request for sanctions against Jackson National with respect to Jackson National's interview of Guffrey's physician without counsel for G. P. Enterprises being present and beyond the one-year period for which G. P. Enterprises had authorized such interviews. The applicable physician-patient privilege had been waived, Jackson National learned nothing it would not have learned had it complied with the time limit, and the trial court *did not rely on the results of the interview* in making its decision.

Affirmed.

MICHAEL J. KELLY, J., dissenting, stated that summary disposition is improper in light of unresolved factual issues concerning who prepared the application for insurance, the parties' intent relative to the significance of the inclusion of the date of the physical examination in the policy, the parties' intent relative to prepayment of the premium, and the significance of the partial refund of the prepaid premium.

INSURANCE — LIFE INSURANCE — CONSTRUCTION OF APPLICATION.

The conditions in an application for life insurance that the parties have mutually agreed to must be met before a contract of insurance will become effective.

*Vandeveer Garzia, P.C.* (by *Pamela L. Abbott*), for G. P. Enterprises, Inc.

*Butzel Long* (by *Mark T. Nelson, David H. Oermann,* and *Robert P. Perry*), for Jackson National Life Insurance Company.

*Barry M. Feldman,* for Clifford G. Adams and Adams, Pavlick & Associates.

Before: GRIBBS, P.J., and MICHAEL J. KELLY and REILLY, JJ.

PER CURIAM. Plaintiff, G. P. Enterprises, Inc., appeals as of right from a circuit court order granting defendant Jackson National Life Insurance Company (JNL) summary disposition pursuant to MCR 2.116(C)(10). We affirm.

On February 26, 1988, George Guffrey applied to JNL for "key man" life insurance in the amount of $137,500. The application was made through defendant Clifford G. Adams, an independent insurance agent authorized to sell insurance issued by JNL. Plaintiff was identified as the beneficiary and owner of the proposed "key man" insurance policy.

The application signed by Guffrey and by Ralph Plummer, president of plaintiff, provided, in pertinent part, as follows:

> It is represented that the statements and answers given in this application are true, complete, and correctly recorded to the best of my knowledge and belief. It is agreed that (1) this application shall consist of Part I and Part II and shall be the basis for any policy issued on this application (2) except as otherwise provided in the conditional receipt, if issued, with the same number as Part I of this application, any policy issued on this application shall not take effect unless all of the following conditions are met: (a) the full first premium is paid, (b) the policy is delivered to the owner during the lifetime of the persons to be covered by such policy; (c) the health of all persons to be covered by the policy remains as represented in this application; (3) no waiver or modification shall be binding upon the Company unless in writing and signed by its President or a Vice President . . . .

The application further provided:

> I understand that no policy based on this application will be effective unless all of my statements and answers in this application continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the Company in writing.

On March 8, 1988, Guffrey underwent a medical

examination as part of the application for life
insurance. He was apparently in good health at
that time. However, Guffrey became seriously ill
on March 19, 1988, and was admitted to the hospi-
tal. On March 21, 1988, the application for insur-
ance was approved by JNL. Guffrey's condition
worsened and he eventually became comatose.
Sometime between March 21, 1988, and April 7,
1988, Plummer, the president of plaintiff orally
notified insurance agent Adams of Guffrey's condi-
tion. Adams apparently did not notify JNL of Guf-
frey's condition or suggest that plaintiff communi-
cate Guffrey's condition to JNL in writing. On
April 8, 1988, the policy was delivered to plaintiff.
Guffrey died less than a month later on May 1,
1988. In November 1988, plaintiff was informed by
JNL that the policy was not in effect at the time of
Guffrey's death because JNL had not been advised
of the change in Guffrey's health before the deliv-
ery of the policy, as required by the application for
insurance.

Plaintiff brought suit against JNL and Adams,
seeking to recover the life insurance proceeds. JNL
brought a cross-claim against Adams, asserting
breach of fiduciary duty and negligence. The trial
court granted JNL's motion for summary disposi-
tion, finding that there was no genuine issue of
material fact that the life insurance policy was not
in effect at the time it was delivered to plaintiff.
The court also found that the contract was not
unconscionable or ambiguous. Lastly, the court
denied plaintiff's request for sanctions for JNL's
unauthorized interview of Guffrey's physicians.

A motion for summary disposition may be
granted pursuant to MCR 2.116(C)(10) when, ex-
cept with regard to the amount of damages, there
is no genuine issue of material fact and the mov-
ing party is entitled to judgment or partial sum-

mary judgment as a matter of law. *Featherly v Teledyne Industries, Inc,* 194 Mich App 352, 357; 486 NW2d 361 (1992). A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. The opponent must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Amorello v Monsanto Corp,* 186 Mich App 324, 329-330; 463 NW2d 487 (1990). The trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented. *Id.* Giving the benefit of reasonable doubt to the nonmovant, the trial court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Featherly, supra.*

I

Plaintiff argues that there is an ambiguity in the insurance policy that must be construed against JNL. Plaintiff contends that the above-noted language in the application, withholding coverage if the declarations and answers are no longer true when the policy is received by the applicant, conflicts with the effective date in the insurance policy itself. Plaintiff asserts that, under the policy language, the policy became effective when Guffrey passed the medical examination on March 8, 1988.

Any clause in an insurance policy is valid as long as it is clear, unambiguous, and not in contravention of public policy. *Raska v Farm Bureau Ins Co,* 412 Mich 355, 362; 314 NW2d 440 (1982). A contract is ambiguous when its words may reasonably be understood in different ways. *Id.; Auto Club Ins Ass'n v DeLaGarza,* 433 Mich 208, 213; 444 NW2d 803 (1989).

Initially, we note that the language relied upon by plaintiff in support of its assertion that the policy became effective on March 8, 1988, does not appear in the insurance policy itself. Rather, it is in JNL's "Rate Book," which is not part of the policy of insurance but apparently is a guidebook for agents selling JNL insurance.[1] Because this language is not part of the policy itself, plaintiff cannot rely on it to create an ambiguity.

Furthermore, we agree with JNL that the "policy date" is distinguishable from the "effective date."

> "Where an application provides that the insurance shall not take effect until the approval of the application by the insurer, no contract of insurance exists prior to such approval, although the application also provides that the policy shall bear the same date as the application and that the time covered by the premium shall be measured from that date." [*Smiley v Prudential Ins Co,* 321 Mich 60, 69; 32 NW2d 48 (1948), quoting *Olson v American Central States Life Ins Co,* 172 Minn 511; 216 NW 225 (1927).]

We agree with the circuit court that simply because the insurance policy is dated March 8, 1988, does not mean that that date is the effective date of coverage. The application clearly states that the insurance policy will not be effective unless certain conditions are met.

Plaintiff also argues that the interim insurance receipt, when read together with the application and the policy itself, creates an ambiguity with

---

[1] The Rate Book provides in pertinent part:

Unless a specified date of issue is requested in the application, policies that are not prepaid will be dated as of the date the policy is actually issued by the Home Office. Prepaid applications will be dated as of the date of the application or the examination, which ever is the later.

We agree with JNL that this provision does not conflict with the application with regard to the effective date of the policy.

regard to the effective date of the insurance policy. We agree with the analysis of the trial court in this regard:

> . The Court also finds that when the policy and the Interim Insurance Receipt are read together there is no ambiguity. As stated by Jackson, the Receipt simply provides temporary coverage from the date of the medical exam until the date the policy is formally approved. After formal approval of the policy the interim insurance terminates and there is no coverage until the policy is delivered. Of course the other conditions of the policy must be met, such as the health of the proposed insured must remain as represented in the application. . . .[2]

We perceive no ambiguity regarding the conditions necessary to make the policy of insurance effective. Furthermore, we do not believe that plaintiff, upon reading the language in the application together with the language in the policy and the interim insurance receipt, would have a reasonable expectation that the policy would be in effect if the conditions set out in the application were not met. See *Vanguard Ins Co v Clarke,* 438 Mich 463, 472; 475 NW2d 48 (1991).

II

Plaintiff argues, contrary to JNL's argument and the findings of the trial court, that the policy

---

[2] Plaintiff argues that the fact that there may be a period between formal approval of the policy and actual delivery of the policy when neither interim insurance nor the policy itself is in effect may produce inequitable results in some cases. However, that situation is not presented in this case. Guffrey died after the policy was delivered. Defendant is not denying coverage because Guffrey died during the period when the interim insurance had expired and the approved insurance policy had not yet been delivered. Rather, defendant denies coverage because of lack of compliance with the terms of the application of insurance.

became effective because plaintiff substantially complied with the requirements of the application for insurance and because JNL delivered the policy with notice of Guffrey's change in health, thereby waiving the requirements in the application.

An application for insurance is a mere offer that must be accepted before a contract of insurance will come into existence. *Smiley, supra* at 68-69; *Gorham v Peerless Life Ins Co,* 368 Mich 335, 341; 118 NW2d 306 (1962). The conditions in the application that the parties have mutually agreed to must be met before a contract of insurance will become effective. *Karp v Metropolitan Life Ins Co,* 268 Mich 255, 258; 256 NW 330 (1934).

Plaintiff argues that there was substantial compliance with the terms of the insurance application because Adams, the insurance agent, was orally informed by Plummer of Guffrey's change in health before the policy was delivered.[3] Plaintiff argues and defendant acknowledges that the insurance agent's knowledge of the change of condition is imputed to the insurance company. See MCL 500.2220; MSA 24.12220; *Turner v Mutual Benefit Health & Accident Ass'n,* 316 Mich 6, 21; 24 NW2d 534 (1946). Nevertheless, we reject plaintiff's argument that the oral notification to the insurance agent of the change in Guffrey's condition satisfied the terms of the insurance application. The application specifically stated that notification must be to JNL in writing. The application also provides that "no waiver or modification shall be binding upon the Company unless in writing and signed by its President or a Vice President."

[3] Plaintiff argues, in the alternative, that it was impossible for Guffrey to comply with the notice requirement. We agree. However, we also agree with the trial court's finding that the notification requirement applied equally to Plummer, who signed the application for insurance as the representative of the owner and beneficiary of the policy.

Even if we were to find that the oral notification was in substantial compliance with the express term of the application requiring written notification to the insurance company of a change in condition, we still must conclude that the terms of the application were not fulfilled.

As was noted previously, the insurance application specifically sets forth three conditions that must be satisfied before a policy issued *on that application* will become effective: (1) the first premium must be paid; (2) the policy must be delivered during the lifetime of the person covered by such policy; and (3) the health of the person to be covered by the policy must remain as represented in the application. It is not disputed that the third condition, regardless of whatever notice might have been given, was not met in this case.

Plaintiff also argues that, by delivering the insurance policy, defendant waived the right to declare the policy ineffective for failure to comply with the other conditions. We do not believe that the case cited by plaintiff in support of this argument is applicable in this case. In *Glass v Harvest Life Ins Co,* 168 Mich App 667; 425 NW2d 107 (1988), the defendant accepted a premium payment although it was aware that the policy at issue had lapsed, that a late payment offer had expired without acceptance by the plaintiff, and that the insured had died after the policy had lapsed and before the premium payment had been made. The Court held that the defendant's acceptance and deposit of the premium payment under such circumstances amounted to a waiver of the defendant's right to claim that the policy had lapsed for failure to pay the premium. *Id.* at 671.

In the present case, we do not believe that JNL waived its right to require that all the conditions of the application for insurance be met by simply

delivering the policy to plaintiff. As noted above, the application specifically stated that three independent conditions must be met before the policy would be effective. Delivery of the policy during the insured's lifetime was only one condition. The fact that the policy was delivered while Guffrey was still alive did not nullify the fact that the proposed insured's health had changed drastically before the policy was delivered and, therefore, one of the conditions necessary for the policy to become effective was lacking.

### III

Next, plaintiff argues that JNL was not entitled to the equitable remedy of rescission and that the provisions in the insurance application were unconscionable.

Rescission necessarily involves a repudiation of a contract and a refusal of the party seeking rescission to be further bound by it. See *Wall v Zynda,* 283 Mich 260, 264; 278 NW 66 (1938). However, JNL did not claim in its motion for summary disposition that it was seeking rescission of an insurance contract. Rather JNL asserted, as it does here, that the insurance policy never became effective. Accordingly, we conclude that plaintiff's argument that JNL was not entitled to rescission is irrelevant and without merit.

Additionally, we reject plaintiff's argument of unconscionability. See *Stenke v Masland Development Co, Inc,* 152 Mich App 562, 572-573; 394 NW2d 418 (1986).

### IV

Lastly, plaintiff argues that the trial court abused its discretion in denying plaintiff's request

for sanctions against JNL. In this case, plaintiff, as the named beneficiary of Guffrey's life insurance policy, waived any claim to a physician-patient privilege on the part of Guffrey for a period of one year. Plaintiff asserts that it is entitled to sanctions because JNL's counsel interviewed Guffrey's physicians after the authorized period and without the presence of plaintiff's counsel. Although JNL presented affidavits from these physicians to the trial court in support of its motion for summary disposition, the trial court stated in its opinion that it did not rely on the affidavits in rendering its decision.

Plaintiff has not cited and our research has not revealed a case where sanctions were authorized in a situation such as that presented in this case. In support of its argument, plaintiff relies on *Lawrence v Bay Osteopathic Hosp, Inc,* 175 Mich App 61; 437 NW2d 296 (1989), where a panel of this Court held that it was improper for defense counsel to conduct an ex parte interview of the plaintiff's physician without the plaintiff's consent. However, the Court found that the imposition of sanctions against the defendants was not warranted because, at the time of the interview, case law suggested that the defendants' actions were not necessarily improper. *Id.* at 63-64.

We are not persuaded by plaintiff's reliance on *Lawrence* because the Supreme Court has since decided that ex parte interviews such as the one in this case are proper where there has been a waiver of the physician-patient privilege. *Domako v Rowe,* 438 Mich 347, 362; 475 NW2d 30 (1991). In this case, plaintiff, as beneficiary of the life insurance policy, waived the physician-patient privilege with regard to Guffrey's physician. See *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608, 617; 310 NW2d 15 (1981). The authorization signed by

Plummer on behalf of plaintiff was valid for one year beginning on May 17, 1988. Plaintiff asserts that, because the authorization was not valid at the time Guffrey's physicians were interviewed, the privilege cannot be considered waived. Plaintiff has not cited any case in support of its argument that a waiver of a privilege may last for only a certain period of time.[4]

However, we need not decide the issue because we conclude that under the circumstances of this case, the trial court did not abuse its discretion in denying sanctions. See *Farrell v Auto Club of Michigan,* 155 Mich App 378, 388; 391 NW2d 531 (1986). There is nothing in the record to indicate that defendant's interview of Guffrey's physicians outside the time authorized by plaintiff allowed JNL to discover any information it would not have discovered if it had complied with the time limit. Furthermore, the trial court explicitly stated that it did not rely on the results of the interviews in making its decision. Plaintiff was not prejudiced by the actions of defendant.

Affirmed.

MICHAEL J. KELLY, J. *(dissenting).* I respectfully dissent. It seems to me that there are factual issues that should be determined by a trier of fact. The trial court did not address these contested claims:

1. The application referred to in the majority opinion is a form prepared by defendant Jackson National Life Insurance Company containing two

---

[4] In *Domako, supra,* the Court stated that once a plaintiff has allowed discovery of medical information, the plaintiff is not thereafter free to assert the privilege. The Court reasoned that the privilege is designed to protect confidentiality and that the voluntary disclosure of the information takes away the need for confidentiality. *Domako, supra* at 357. This language would seem to support a finding that the physician-patient privilege may not be waived for a certain period and thereafter be reinstated.

parts. Part I is entitled "Application for Insurance on Life of Proposed Insured named below." Part II is entitled "Declarations (in lieu of medical examination)." Plaintiff contends that the application was signed by Guffrey and Plummer on February 26, 1988, in blank. The principals had a relationship with agent Adams, going back at least to 1986, when the agent had placed insurance on each principal for $150,000 to fund a buy/sell agreement and that the $150,000 policy on Guffrey had been placed with defendant Jackson National Life. (That policy of course is not at issue here; as far as we know there was no contest over that policy and it presumably has been paid in accordance with its terms.) The point is that plaintiff contends that the transaction at issue was delegated to agent Adams entirely. Guffrey signed the application in blank, Adams left plaintiff's office with the application and later filled in all the blanks, including those in Part II, answering all the medical questions. Plaintiff, though listed as owner and beneficiary of the policy, was not furnished a copy of the application, it was given only the "interim insurance receipt," which did not contain the language relied upon by the trial court and the majority.

2. The actual policy bears the date of March 8, 1988, as the policy date, which of course relates back to the date of the medical examination. Neither the trial court nor the majority assessed the intent of the parties with regard to that critical date.

3. Neither the trial court nor the majority assessed the intent of the parties with respect to the prepayment of the premium for the first year by G. P. Enterprises check No. 1493 in the amount of $200 dated February 26, 1988.

4. Neither the trial court nor the majority as-

sessed the significance of the $25 earned premium unilaterally computed by defendant Jackson National Life when it rejected plaintiff's claim in its letter of November 2, 1988, and returned the "unearned premium" check of $175.35.

There is no question but that the insured passed a medical examination on March 8, 1988, by an examiner chosen by the insurance company. It seems to me that a trier of fact could find that that was the condition precedent to triggering coverage. The policy could have been issued that day or as soon thereafter as reasonably contemplated by the parties. When it was issued—considerably later—it related back to March 8, 1988. Had Guffrey been the victim of an instantaneous fatal accident there would be no coverage question. Because he was the victim of a fatal illness (pneumonia), the interpretation of the documents prepared by the company, which documents must be construed against the company, presents issues for the jury.

A jury should decide what the parties intended by prepayment. Bearing upon that issue is the agent's interpretation, communicated to the plaintiff, that coverage was in effect. A jury could conclude that, because coverage was provided by the interim insurance receipt from the date of the completion of the medical exam, approval of the policy was automatic. Alternatively, the jury could conclude that the policy should reasonably have been effected before March 21, 1988, either in accordance with industry standards or in fulfillment of the intent of the parties. Certainly, the admission by agent Adams is entitled to be weighed in the balance. The agent thought approval was automatic. The trier of fact should decide if the delay in policy approval and policy delivery were reasonably contemplated by the par-

ties. The delay could only benefit the party that controlled it, and any delay permitted the company to have the benefit of plaintiff's premium risk-free. I doubt that was the intent of the parties.

I would reverse.