PHILIP EVELOFF, BY HIS NEXT FRIEND RACHAEL EVELOFF, RESPONDENT, v. FRED CRAM, ALIAS FRED CRUM, E. K. OLDENBURG, INTERPLEADER, APPELLANT.—161 S. W. (2d) 36.

Kansas City Court of Appeals. April 6, 1942.

*Tom Gershon* and *Marcy K. Brown, Jr.,* for respondent.

*John W. Hudson* and *Alan F. Wherritt* for appellant.

SHAIN, P. J.—This is an appeal from the judgment of the Circuit Court of Clay County. The appeal is by E. K. Oldenburg, as interpleader in a suit wherein Philip Eveloff, by his next friend, Rachael Eveloff, was plaintiff, and Fred Cram, *alias* Fred Crum, was defendant. The facts giving rise to this controversy may be briefly stated as follows:

Fred Cram was a resident of the State of Minnesota. On the 3d day of December, 1939, he was driving his Chevrolet automobile along the highway in Platte County, Missouri, and was involved in an automobile accident resulting in injuries to several persons riding in another automobile on said highway. On December 4, 1939, Rachael Eveloff and Helen Agronofsky, who were two of the persons so injured, filed suits for their personal injuries in the Clay County Circuit Court, and attached the Chevrolet car then belonging to Fred Cram. After the accident, the Cram car was taken to the Allen Chevrolet Company in North Kansas City, and it was there when the sheriff served the writ of attachment, and the sheriff left said car at the Allen Chevrolet Company. Personal service in the two damage suits was not obtained upon Fred Cram.

After the accident, Mr. Cram got in touch with Interpleader Oldenburg, who was authorized by the Northwestern Casualty Company,

which carried the liability insurance policy on the Cram car, to look after the matter and work out the matters growing out of the accident. Mr. Oldenburg testified that on December 6, 1939, he purchased a new Chevrolet automobile, and traded it to Mr. Cram for his damaged automobile, Mr. Cram paying the difference of approximately $215, the Northwestern Casualty Company reimbursing Mr. Oldenburg. At the time of this transfer, Cram assigned his Minnesota certificate of title to his car to Oldenburg. This assignment was filed with the Secretary of State of Minnesota, but so far as the record shows, no certificate of title was filed or recorded in Missouri. The Cram car, which had been attached, remained at the Allen Chevrolet Company under the two attachments above referred to.

On February 1, 1940, this plaintiff, Philip Eveloff, a minor, through his next friend, filed suit for personal injuries arising out of the same accident, and on proper affidavit, an attachment was issued in his suit and the sheriff attached the Cram car which was located at the Allen Chevrolet Company. Publication was issued and the suit of Philip Eveloff proceeded to trial in the Circuit Court of Clay County, and on March 22, 1940, judgment was rendered in favor of the plaintiff for $1000, and the court ordered that special execution issue therein. Under such special execution, the sheriff levied on the Chevrolet automobile, posted notice of sale, and on April 24, 1940, was sold under such special execution for $445. After the deduction of costs and necessary expenses, about which there is no dispute, there remained in the sheriff's hands the sum of $238.60, according to plaintiff's statement, but according to the return made by the sheriff, there was $312.60 in his hands; however, the exact amount is of no importance at this time.

About May 23, 1940, the attachment suits of Rachael Eveloff and Helen Agronofsky were dismissed and on the same day, interpleader E. K. Oldenburg filed his petition in the Philip Eveloff case, claiming title to the Cram automobile which had been sold under the special execution, or to the net proceeds of such sale. On the same day, Oldenburg filed in said court a motion to vacate the entry of satisfaction of the judgment of Philip Eveloff, which satisfaction had been entered by the attorneys for the plaintiff because the sheriff had delivered to them at that time a check for the net proceeds realized from the sale under such special execution. In due time, the plaintiff, Philip Eveloff, filed answer to the petition of interpleader Oldenburg, and on the issues so made, the cause proceeded to trial before the court, resulting in a judgment dismissing interpleader's petition and motion to vacate entry of satisfaction of judgment and declaring the sale under the special execution of April 24, to be upheld and confirmed and that the net proceeds of said sale be paid over to the plaintiff. From this judgment the interpleader appeals.

Such other facts as are necessary will be mentioned in the opinion.

The appellant (interpleader) under his Points and Authorities, urges four grounds of error. But before examining the points so raised, we must examine the motion for new trial to determine whether such matters were properly called to the attention of the trial court. The assignments in the motion for new trial are as follows:

"1. The verdict in said cause is against the evidence, against the weight of the evidence, and against the law under the evidence.

"2. The verdict was for the wrong party.

"3. The court erred in admitting incompetent evidence offered by the plaintiff."

The appellant, in his brief filed herein, under head of "Assignment of Errors" sets forth seven abstract charges of error without assignment of reason, reference to record, or citation of authority. Under Points and authorities, the appellant in four paragraphs proceeds to state in a general way his interpretation of the law as to legal title, as to what constituted delivery, and as to the nature of plaintiff's answer.

Appellant's assignment of errors is not in accordance with our established rules as to same. However, in the case of Municipal Securities Corporation v. Kansas City, 265 Mo. 252, 1. c. 265, the Supreme Court en banc held that, under an assignment in the motion for new trial "that the finding is against both the law and the evidence and against the law under the evidence," the Court would look to the record to see if there is any substantial evidence in the case, which, when applied to the case made by the pleadings, will as a matter of law, permit the judgment to stand. This ruling has been followed in a number of cases, some of which are Burns v. School District of Desloge, 50 S. W. (2d) 677; Hoppe v. Boerger, 116 S. W. (2d) 195, and Franklin v. Local Finance Co., 136 S. W. (2d) 112. In this case we will follow the rule as announced by the Supreme Court en banc in Municipal Securities Corporation v. Kansas City, *supra*. We will overrule the opinion of this court in the case of Whitehead v. Liberty National Bank of Kansas City, 56 S. W. (2d) 833, insofar as it conflicts with the rule above announced.

This case was tried before the court without the aid of a jury, and no declarations of law or finding of facts were requested by either party. The court in its judgment, among other things, found "that the intervenor herein had no legal right, title or interest in or to said automobile." Therefore, under the state of the record in this case, the only question is whether the judgment can be sustained upon any proper theory. The only evidence is that of the intervenor. He introduced his Exhibit No. 1, which purports to be a contract of exchange of automobiles, wherein it was recited that intervenor owned a certain Chevrolet automobile and Fred Cram was also the owner of a certain automobile which was then located at the Allen Chevrolet Company at North Kansas City, Missouri, and the parties agreed to exchange

said automobiles on the condition that the said Fred Cram should pay to intervenor the sum of $215 in cash, and. that they would execute to each other all papers and documents required by the statutes of the State of Missouri or the State of Minnesota, for the purpose of effectuating and recording the conveyance of title. Intervenor also introduced his Exhibit No. 2, which purports to be the certificate of title of Fred Cram to his Chevrolet automobile, and said certificate was endorsed by the said Fred Cram. There is nothing in the record to show whether the intervenor delivered to Cram a certificate of title to the car which he was trading. Referring to the new car which intervenor claimed he delivered to Cram, he testified as follows:

"Q. Where did you get that new car? A. From the Land-Goddard Chevrolet Company.

"Q. Did you secure title to that car? A. Yes.

"Q. To the new car? A. *I believe that I did.*"

He further testified that he did not pay the consideration for the purchase of the new car; that the insurance company paid for it; that it was merely an arranged deal so Mr. Cram could get out of Kansas City and go on to Texas, and the insurance company take care of his liability under his policy by buying this new car, less the $215 which Cram paid. And it appears from the record that this $215 was not paid to intervenor, but to the attorneys representing the insurance company. The record also shows that the intervenor knew of this attachment suit and knew that the Cram car had been levied on under the special execution, and was being advertised for sale, and that he knew of the sale, and at no time notified the sheriff of Clay County or the Allen Chevrolet Company, or any one else connected with the suit, that he had or claimed any interest or title in said Chevrolet car until he filed his interpleader, long after the car had been sold under the special execution.

From a careful reading of the record before us, we conclude there is showing indicating very strongly that the interpleader herein is merely a middle man making adjustment between Cram and the insurance company and that the contract and title, filed as exhibit herein, are instruments of transfer of title, rather than vesture of title. Whatever may have been the finding of the trial court as to the above, we conclude that there are other grounds justifying the judgment of the trial court.

The plaintiff in the original suit, respondent herein, in answer to interplea, narrates the facts of delay on the part of interpleader with full knowledge of all matters, set forth, *supra,* and thereupon alleges waiver and estoppel.

It is a fundamental principle of law that one in possession of a right, conferred by law or contract, and who has full knowledge of material facts who does, or fails to do, something which is incon-

sistent with the existence of his right or of his intention to rely upon same, waives such right and is precluded from thereafter asserting same. [Williams v. Chicago, S. F. & C. R. Co., 153 Mo. 487, 54 S. W. 689.]

In that the interpleader herein knew of the attachment and all court proceedings had therein, including trial on merits, judgment on merits, orders of sale, sale of property under special execution, order of distribution and satisfaction of judgment, and asserted no claim until after suit had fully terminated, we conclude that the filing of interplea came too late. Under the provisions of the law stated, *supra*, we conclude that the trial court was justified in making the orders that were made.

Basing our conclusion on the showing of the record before us, we therefore conclude that the judgment should be affirmed, and it is so ordered. All concur.