PHILLIPS v SMEEKENS

1. CONTRACTS—FRAUD—MISREPRESENTATION—DEFENSES—KNOWL-
EDGE.

A fraudulent misrepresentation is not actionable unless justifi-
ably relied upon by the damaged party and a party may not
rely on a representation where he knows other representations
in the same transaction are false; thus, in a contract action, a
defense of fraudulent misrepresentation will not prevail where
the defendant entered into an agreement at a specified price
with knowledge of what he claimed to be a false representation
and in the face of his own claimed knowledge of a dispute as to
certain pertinent facts.

2. CONTRACTS—DEFENSES—FRAUD—BURDEN OF PROOF.

A defendant in a contract action who alleges fraud as a defense
has the burden of proving the elements of the fraud by clear
and convincing evidence.

Appeal from Jackson, William F. Ager, Jr., J.
Submitted Division 2 November 15, 1973, at Lans-
ing. (Docket No. 12924.) Decided December 6, 1973.
Leave to appeal denied, 391 Mich —.

Complaint by Dale Phillips and Mary M. Phil-
lips against John P. Smeekens, Arlene L. Smeek-
ens, B. J. French, and Joan M. French for damages
for breach of contract. Judgment for plaintiffs.
Defendants appeal. Affirmed.

*Susskind & Hedstrom, P. C.,* for plaintiffs.

*Kenneth B. Johnson* and *Townsend & Korten,*
for defendants.

Before: QUINN, P. J., and HOLBROOK and PETER-
SON,* JJ.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur 2d, Fraud and Deceit § 223 *et seq.*
[2] 17 Am Jur 2d, Contracts § 238.
  * Circuit judge, sitting on the Court of Appeals by assignment.

PETERSON, J. Plaintiffs prevailed below in their claim for damages for breach of a contract for the sale of a business and breach of the lease of the business premises. Defendants assert that the trial court erred in finding that there was an actionable breach, in rejecting certain claimed affirmative defenses, and in denying their counterclaim for recission or reaffirmation of the contract because of alleged fraudulent misrepresentations by the vendor-plaintiffs.

Neither of the defendants were novices in the furniture business. To the contrary, both were experienced businessmen. In 1966, Smeekens was the general manager of a chain of furniture stores and French was the manager of one of the stores of that company. French learned that Mr. Phillips might be interested in selling his furniture business. He visited Phillips' store and made some overtures towards purchase, which Phillips rejected because of the belief that French had insufficient capital. French then opened a furniture store of his own in another community, but he retained his interest in acquiring the Phillips' business and later approached Smeekens for financial backing for that purpose.

On July 25, 1967, French and Smeekens had lunch with Phillips, indicated their interest in buying his business and arrived at an agreement with him for the purchase. Whether they negotiated in terms of the dollar values of specific assets and liabilities of the business was disputed at trial, but it was defendants' claim that Phillips made affirmative representations as to the specific values of inventory, equipment and fixtures, and accounts receivable and payable. They further claimed that their real agreement with Phillips was to purchase the property at the value of the assets, without

any payment for good will. Their agreement as written, however, merely stated a purchase price of $140,000 for the going business. The contract of sale and lease of the business premises were executed three days later, on July 28th, and defendants took possession and began their operation of the business on August 1st.

Defendants claim that they were almost immediately aware of discrepancies to their detriment between the amounts of inventory and accounts receivable and payable as allegedly represented and as found, and that they began a verification thereof. On September 6th they met with Phillips, told him of their claimed findings, and told him they intended to rescind the transaction. Phillips was willing to accept their figures as to inventory, but he did not admit any misrepresentation; and plaintiff's own testimony admits that he disputed their computations of accounts receivable and payable. Defendants testified that Phillips promised to do right and pleaded with them that he didn't want to take back the business because of poor health.

The parties concluded their meeting by an agreement to reduce the sales price by $55,000, going ahead with the transaction at a revised purchase price of $85,000. Defendants immediately had their attorney prepare a revised sales agreement, to which he procured Phillips' signature that same day. By the terms of the revised agreement, Phillips acknowledged that a representation had been made that the net assets of the business were worth at least $140,000, that the price originally agreed upon was based thereon, that the representation was false, that defendants could have rescinded the transaction had they so desired, and that their agreement to continue the

purchase rather than rescind was the consideration for Phillips' agreement to reduce the purchase price.

Thereafter defendants continued to operate the business. Further disputes arose between the parties, however, about the business records, amount of payables, and the amount and collectability of receivables. To some extent at least, Phillips did attempt to meet the "do right" demands of defendants by thereafter paying some of the accounts payable, and by taking from defendants (as payment on the purchase price) some accounts receivable which defendants deemed uncollectable. Thereafter there were further disputes between them not relevant to this appeal.

Defendants eventually ceased payments on both the purchase agreement and the lease and this action followed.

The trial court found no actionable fraudulent misrepresentations in connection with the revised agreement of September 6th. Defendants claim that his findings were inadequate and did not go to the principle point they raised at trial of discrepancies in accounts payable and receivable, pointing to the trial judge's finding that "defendants have not proven that they relied upon any representation made by the plaintiffs as to the inventory in signing the second agreement". At a later point in the opinion, however, the trial judge made clear his conclusion that there was no misrepresentation relied upon by the defendants as to inventory and accounts receivable, noting that they dealt at arms length because of their prior experience under the first sales agreement and that they were on notice that there was some question as to the inventory, accounts receivable, and accounts payable.

It is not disputed, of course, that a fraudulent misrepresentation is not actionable unless relied upon by the damaged party. *Michael v Jones,* 333 Mich 476; 53 NW2d 342 (1952). Defendants assert, however, that this was a continuing fraud and that they relied upon the promise of Phillips to do right in executing the revised agreement. Unfortunately, they entered into an agreement at a specific price, with knowledge of what they claimed to be a false misrepresentation of inventory and in the face of their own claimed knowledge of a dispute as to the amount of accounts receivable and payable. But one cannot rely on a representation where he knows other representations in the same transaction are false. *Gratz v Schuler,* 25 Cal App 117; 142 P 899 (1914); 61 ALR 513. Defendants are even less entitled to rely on such representations where they are the ones affirmatively claiming knowledge of discrepancies in the accounts receivable and payable at the time of the agreement.

Defendants had the burden of proving the elements of a fraud action by clear and convincing evidence, *Margolis v Benton,* 343 Mich 34; 72 NW2d 213 (1955). A review of the record discloses that we would arrive at no different findings than those of the trial court. *Christine Bldg Co v City of Troy,* 367 Mich 508; 116 NW2d 816 (1962).

We find no merit to the other claims of error.

Affirmed.

All concurred.