**Donna S. SHEEHAN,**
**Plaintiff/Appellant,**

v.

**NORTHWESTERN MUTUAL LIFE**
**INSURANCE COMPANY,**
**Defendant/Respondent.**

**No. ED 80693.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 10, 2002.

Application for Transfer to Supreme
Court Denied April 10, 2003.

Application for Transfer Denied
May 27, 2003.

---

Michael D. O'Keefe, Kenton Ernst Knickmeyer, co/counsel Thompson Coburn LLP Law Firm, St. Louis, for Appellant.

Karen Baudendistel, Thomas Blumeyer Weaver, Cynthia Sciuto, Armstrong, Teasdale, Schlafly, Davis & Dicus Law Firm, St. Louis, for Respondent.

Dawn Ann Morville Johnson, Greensfelder, Hemker & Gale, St. Louis, for Defendant.

SHERRI B. SULLIVAN, Judge.

*Introduction*

Donna S. Sheehan (Appellant) appeals from the judgment of the trial court entered upon a jury verdict in favor of Northwestern Mutual Insurance Company (Northwestern). We affirm.

*Factual Background*

Appellant is the beneficiary of a life insurance policy issued by Northwestern in December 1996, on the life of Thomas Sheehan, Appellant's husband (Decedent). Decedent engaged Christopher Wright (Wright) as his insurance agent to procure the policy. Wright was an insurance agent for the John M. Qualy Agency and the Sheehans' family friend. Wright had previously purchased various insurance policies for the Sheehans.

Decedent approached Wright about purchasing more life insurance after learning Appellant was pregnant. Wright advised, in a letter dated August 27, 1996, that he was enclosing application signature pages for Decedent to sign and that he would work out the details regarding submission of the forms. There is a dispute as to whether Decedent received the entire application or only the signature pages, and whether Decedent signed those pages in blank. Robin Hensley (Hensley), an associate of Wright's, testified that she filled out all of the information on the first five pages of the application, such as name, address, and other similar information.

After the application was completed, Decedent was scheduled for a paramedical examination. There is also a dispute as to whether Decedent actually participated in the paramedical examination or if the paramedical questionnaire was filled out after Decedent signed the form in blank. Michele Chiaramonte (Chiaramonte), a licensed practical nurse who conducts paramedical examinations for various insurance companies, including Northwestern, submitted an affidavit stating she had no specific recollection of Decedent's exam. However, she further stated it is her cus-

tom and practice during every paramedical examination to ask the applicant each question as it is printed on the questionnaire. The applicant responds, and she records the answers after each question by marking a box either "yes" or "no" consistent with the applicant's answer. If an applicant answers "yes" to a question, Chiaramonte records details about that answer in the space provided based upon the information received from the applicant. After the questionnaire is completed, Chiaramonte gives it to the applicant to review and sign.

The paramedical questionnaire was signed by Decedent and dated December 7, 1996, and the answers represented that Decedent was not taking any medication or drugs (legal or illegal, prescription or nonprescription) for any reason. Further, the answers represented that Decedent had not used any tranquilizers, sedatives or narcotic drugs in the last ten years, and that he had not been advised to have any test, consultation, hospitalization, or surgery that was not completed in the last five years. However, Decedent did reveal he had used "muscle relaxors" in 1995, had been treated by Dr. John Edelman, and had a single incident of cocaine use at a bachelor party in 1995.

After submission of all of the insurance materials, Northwestern's underwriters evaluated Decedent's application. Due to Decedent's age and amount of coverage requested, Decedent needed to submit to a full medical examination. The underwriters concluded that regardless of the results of the medical examination, Decedent would not be insured by Northwestern based on the prior positive drug test and his elevated liver enzymes. Therefore, after initially declining coverage, Northwestern submitted Decedent's application for reinsurance with several companies, in-

cluding Business Men's Assurance Company (BMA).

In February 1997, BMA advised Northwestern it would reinsure a life insurance policy on Decedent. Thereafter, Northwestern issued a life insurance policy to Decedent and delivered it to him in March 1997, with an effective date of December 6, 1996. Enclosed with the policy was a personal health and status declaration, identified as a supplement to the application, that was signed by Decedent stating since the date of the original application, he had not used illegal drugs or legally prescribed drugs except as stated in the original application.

Decedent died on April 17, 1997, from acute morphine intoxication as stated on his death certificate. Northwestern submitted a claim packet to Wright, who in turn forwarded the packet to Appellant with a letter explaining the claim packet had to be completed in order to obtain payment of the policy benefits. In addition to providing proof of death, Appellant provided a signed authorization that enabled Northwestern to obtain Decedent's medical records for the purpose of evaluating the insurance claim. Northwestern used this authorization to obtain medical records from several of Decedent's treating physicians to process the claim.

The medical records revealed Decedent had a history of drug use that was not disclosed on the paramedical questionnaire. According to the medical records and the testimony of three of Decedent's physicians, Decedent had been prescribed and was taking vicodin, valium, percodan, and other prescription drugs for several months before completing the paramedical questionnaire in December 1996. The records also revealed Decedent took these drugs in excess of their prescribed dosages. Moreover, Decedent continued to take these prescription drugs after signing the

paramedical questionnaire and after signing the personal health and status declaration form in March 1997. After reviewing the medical records, Northwestern notified Appellant on October 30, 1997, that in light of the misrepresentation in Decedent's application as to his prior drug use, it rescinded the life insurance policy.

## Procedural Background

On November 20, 1997, Appellant filed suit against Northwestern. Appellant alleged Northwestern breached the life insurance contract and vexatiously refused to pay the benefits. Northwestern asserted two affirmative defenses, material misrepresentation and fraudulent misrepresentation. The material misrepresentation affirmative defense was struck as a discovery sanction.

On November 24, 1999, the trial court granted Northwestern's motion for summary judgment based upon the misrepresentations made in Decedent's application. Appellant appealed the summary judgment and this court affirmed in part and reversed in part, in a two to one decision, finding that there was a material issue of fact precluding summary judgment on Northwestern's claim of fraudulent misrepresentation in application. *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389 (Mo.App. E.D.2000). On remand, a jury trial was held, and the jury returned a verdict in favor of Northwestern and against Appellant. The trial court entered judgment on that verdict, from which Appellant now appeals.

## Points Relied On

In her first point, Appellant maintains that the trial court erred in holding that the physician-patient privilege was waived and that the trial court further erred in admitting into evidence the testimony of Decedent's treating physicians and the medical records of that treatment because neither the life insurance application signed by Decedent nor the authorization signed by Appellant waived the physician-patient privilege prescribed by Michigan Comp. Laws (M.C.L.) Section 600.2157 (1995) and Missouri law (Section 491.060(5)).[1] Appellant argues that both those instruments expressly limited the use to which the information obtained therewith could be put, neither instrument permitted Northwestern to disclose the medical information obtained using the instrument in a court of law, and both instruments expired by their express terms prior to the times at which Northwestern obtained and offered the testimony and medical records in question, and the filing of this lawsuit did not constitute a waiver of the privilege in that Appellant did not place Decedent's medical history at issue.

## Standard of Review

Admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo.banc 2000). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Id.* at 604.

## Discussion

There is no dispute in this case that Northwestern issued the life insurance policy on Decedent; that the premiums on the policy were paid through the date of Decedent's death; that Appellant was the beneficiary of the policy; that proof of

---

**1.** All statutory references are to RSMo (2000), unless otherwise indicated.

Decedent's death was received by Northwestern at its home office; but that Northwestern had not paid the policy benefits. Accordingly, Appellant would be entitled to judgment on her claim for the policy benefits unless Northwestern could establish an affirmative defense to Appellant's claim.

■ Northwestern claimed an affirmative defense of fraudulent misrepresentation, in that Decedent misrepresented his medical history on his application for the life insurance policy. The jury in the trial below agreed.

Obviously, Northwestern's affirmative defense of fraud depended upon its ability to prove that Decedent misrepresented his medical history on his application for the policy. At trial, Northwestern offered evidence of this misrepresentation in the form of the Paramedical Questionnaire completed by Decedent in conjunction with his application for the policy, the testimony of Decedent's treating physicians and the medical records of their treatment of Decedent, and the pharmacy records of prescriptions and refills. The admission of these items into evidence was premised on the waiver of the physician-patient privilege. Appellant claims the trial court wrongly decided that the physician-patient privilege had been waived.

Michigan law applies to Appellant's claim. *See Sheehan,* 44 S.W.3d at 397.

M.C.L. Section 600.2157 provides that "a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician." This privilege applies to medical records as well as to testimony. *Domako v. Rowe,* 438 Mich. 347, 475 N.W.2d 30 (1991).

However, M.C.L. Section 600.2157 provides for three (3) exceptions to the physician-patient privilege: (1) if the patient brings an action against any defendant to recover for personal injuries, or for malpractice, and the patient produces a physician as a witness in the patient's behalf, the patient is considered to have waived the privilege as to any other physician who has treated the patient for the injuries, disease, or condition; (2) a personal representative of a deceased patient may waive the privilege in a will contest where the testamentary capacity of the deceased is at issue; and (3) the beneficiary of a life insurance policy insuring the life of the patient may waive the privilege after the patient's death for the purpose of providing the necessary documentation to a life insurer in examining a claim for benefits. This third exception was added in 1995 to codify the generally accepted view that the beneficiary in an action on the policy or certificate of insurance may waive the privilege as to communications between a physician and the insured. *G.P. Enterprises, Inc. v. Jackson Nat'l Life Ins. Co.,* 202 Mich.App. 557, 509 N.W.2d 780, 785 (1993); *Drouillard v. Metropolitan Life Ins. Co.,* 107 Mich.App. 608, 310 N.W.2d 15, 20 (1981).

Appellant executed an express authorization permitting Northwestern access to information about Deceased's medical history for the purpose of evaluating whether her claim for benefits was payable. Under M.C.L. Section 600.2157, this execution waives the physician-patient privilege with regard to Decedent's physicians. *See also G.P. Enterprises,* 509 N.W.2d at 785 (holding that the beneficiary's execution of an authorization to release medical records was effective to waive the physician-patient privilege with regard to the decedent's physicians), and *Drouillard,* 310 N.W.2d at 19–20 (holding that the benefi-

ciary's execution of an authorization to inspect the insured's medical records waived the physician-patient privilege as to the deceased).

Appellant cites various cases to support her argument that the authorization was not sufficient to waive the physician-patient privilege. All of these cases predate the Michigan legislature's 1995 amendment of M.C.L. Section 600.2157 to permit beneficiaries to waive the physician-patient privilege, and therefore fail to support her argument.

The authorization given by Appellant stated that "this Authorization shall be valid for as long as this claim is pending." Appellant argues that once Northwestern rejected her claim on October 30, 1997, the claim was no longer "pending," and therefore the authorization was not valid after that date. On the contrary, by bringing suit against Northwestern seeking to determine whether her claim was in fact payable, Appellant perpetuated her claim for benefits.

We find that the trial court's decision to overrule Appellant's objections to medical evidence offered by Northwestern to explain the denial of the claim on the basis of fraudulent misrepresentation was not an abuse of discretion because the physician-patient privilege had been waived.

For the foregoing reasons, Point I is denied.

In her second point, Appellant claims the trial court erred in submitting Jury Instruction No. 7 because it was prejudicial to Appellant to suggest that the jury needed to decide whether Appellant had proved the elements of her claim in that each element of Appellant's prima facie case was conceded or undisputed.

### Standard of Review

■■ When reviewing the propriety of an instruction, we must review the evi-

dence in the light most favorable to the submission of the instruction, and a party is entitled to an instruction upon any theory supported by the evidence. *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 633 (Mo.App. E.D.2002). A verdict directing instruction is erroneous if any required finding is contrary to law, or is not supported by the evidence. *Dwyer, Costello and Knox, P.C. v. Diak*, 846 S.W.2d 742, 747 (Mo.App. E.D.1993).

### Discussion

Missouri Approved Instruction (MAI) 31.08 is Missouri's approved verdict director for an action on a life insurance policy. Instruction No. 7 conformed precisely to MAI 31.08 and read as follows:

Your verdict must be for plaintiff if you believe:

First, defendant issued its policy of life insurance to Thomas J. Sheehan, Jr., and

Second, the policy was in force on April 17, 1997 when Thomas J. Sheehan, Jr., died, and

Third, plaintiff then was beneficiary of the policy,

Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 8.

Appellant complains that the first three elements were conceded facts, and requiring the jury to determine them was prejudicial to her.

■■ When a fact material to a party's case is conceded or undisputed, its inclusion under an approved jury instruction is *not mandatory*. *Westerhold v. Mullenix Corp.*, 777 S.W.2d 257, 266 (Mo.App. E.D. 1989); *McPherson v. Bi–State Dev. Agency*, 702 S.W.2d 129, 132 (Mo.App. E.D. 1985). In other words, it can be included, but it does not have to be. Under this

reasoning, the inclusion of a conceded fact cannot be prejudicial error. In fact, the inclusion of undisputed facts in an instruction has been held not to be error. *See Terry v. Sweeney*, 420 S.W.2d 368, 376 (Mo.App.1967).

For the foregoing reasons, Point II is denied.

In her third point, Appellant asserts the trial court erred in submitting Northwestern's affirmative defense of fraudulent misrepresentation to the jury because Northwestern did not pay into court for Appellant's benefit the premiums Northwestern received in respect to the policy as required by Section 376.610 in that Northwestern's defense of fraudulent misrepresentation was based upon misrepresentations in obtaining the policy.

### Standard of Review

The standard of review for this point is set forth under Point II.

### Discussion

■ Section 376.610 provides that in suits on life insurance policies, an insurer's defenses based on misrepresentation will not be valid unless the insurer "at or before the trial, deposit in court for the benefit of plaintiffs, the premiums received on such policies." It is not disputed that throughout the entire duration of the underlying litigation, Northwestern never deposited the premiums in court.

In October 1997, after determining that Decedent misrepresented his drug use in obtaining the policy, Northwestern tendered to Appellant's counsel a check in the amount of $522.42, representing all premiums paid for the policy by the Sheehans, plus interest. Appellant never cashed the check, which expired 90 days from the date of its issuance.

In November 1997, Appellant filed suit against Northwestern. On October 15, 1999, after almost two years of discovery, Northwestern filed its motion for summary judgment based on its affirmative defense of fraud. In her response to the motion, Appellant never raised the issue of failure to deposit premiums into the court pursuant to Section 376.610. The trial court granted the motion on November 24, 1999.

Appellant appealed from the judgment to this Court, but never raised the issue of failure to deposit premiums into the court in her appeal. *Sheehan*, 44 S.W.3d 389. On November 14, 2000, we found that an issue of material fact as to whether Decedent was able to distinguish between the classifications of medications as "muscle relaxors (sic)" as opposed to those classified as "tranquilizers," "sedatives," or "narcotics," remained in the case precluding summary judgment. Upon transfer to the Missouri Supreme Court, Appellant never raised Northwestern's failure to deposit the premiums into court in her substitute brief. The case was eventually remanded back to the trial court for a jury trial. After Northwestern rested its case in the jury trial, Appellant raised by objection for the first time in four years after she filed her lawsuit the argument that Northwestern's affirmative defense should be stricken for failure to deposit into court the premiums pursuant to Section 376.610. The trial court denied Appellant's objection.

The requirement of Section 376.610 is waived where a defense is made without objection by the plaintiff. *Poignee v. Monumental Life Ins. Co.*, 157 S.W.2d 531, 532 (Mo.App.1942). The issue of waiver is an issue of law. *Bartleman v. Humphrey*, 441 S.W.2d 335, 347 (Mo.banc 1969). In this case, Northwestern made its defense and was granted summary judgment based on that defense, without

objection by Appellant. Appellant's failure to present an objection based on Section 376.610 when faced with all of the material facts entitling Northwestern to judgment as a matter of law, is so consistent with the intention to waive that no other reasonable explanation is possible. *Id.* at 343. It is a fundamental principle of law that one in possession of a right, conferred by law or contract, and *who has full knowledge of material facts* who does, or *fails to do,* something which is inconsistent with the existence of his right or of his intention to rely upon same, waives such right and is precluded from claiming anything by reason of it afterwards. *Eveloff v. Cram,* 236 Mo.App. 1013, 161 S.W.2d 36, 39 (1942).

Even on appeal, when Appellant realized that judgment as a matter of law had already been entered against her, she did not raise this issue. Accordingly, we agree with the trial court's decision that Appellant waived the issue of Northwestern's failure to pay into court the premiums pursuant to Section 376.610.

Appellant maintains that she objected to the failure to deposit the premiums into court prior to the submission of Northwestern's defense to the jury, and therefore, prior to the conclusion of the trial. Section 376.610 contains the words "at or before *the trial.*" However, to construe this language as obviating the need to raise this issue on summary judgment proceedings elevates form over substance, as well as undermines the nature and purpose of summary judgment. In summary judgment proceedings,

> [A] "defending party" may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) *that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.* Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

When, and only when, the movant has made the prima facie showing required by Rule 74.04(c), *Rule 74.04(e) places burdens on the non-movant.* "When a motion for summary judgment is made and supported as provided in this Rule 74.04," i.e., when the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). [Emphasis added.]

Thus, once a movant has met the burden imposed by Rule 74.04(c) by establishing a right to judgment as a matter of law, *the non-movant's only recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law.*

... [W]here the defendant has raised an affirmative defense, a claimant's right to judgment depends just as much on the non-viability of that affirmative defense as it does on the viability of the claimant's claim. It does not matter that the non-movant will bear the burden on this issue at trial. *Summary judgment permits the "claimant" to avoid trial;* in order to do so, the claimant must meet the burden imposed by Rule 74.04(c) by showing a right to judgment as a matter of law. Therefore, a claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law. Unlike the burden of establishing all of the facts necessary to his claim, however, the claimant may defeat an affirmative defense by establishing that any one of the facts necessary to support the defense is absent. At this stage of the proceeding, the analysis centers on Rule 74.04(c); it is irrelevant what the non-movant has or has not said or done. [Emphasis added.]

*ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 381 (Mo.banc 1993).

We find that Appellant was obligated at the time Northwestern raised its affirmative defense of fraud and moved for summary judgment based on that defense, to raise the issue of Northwestern's noncompliance with Section 376.610, because the entitlement to summary judgment obviates the need for a trial. We do not find any authority for the argument that the legislators intended to exclude summary judgment proceedings from Section 376.610. Summary judgment obviates the need for a trial, and therefore stands in its place. If the summary judgment had not been reversed on grounds other than the failure to pay the premiums, Appellant's argument could not be heard. The reversal was fortuitous. It affected only the issues determined by the summary judgment. Waiver was not an issue determined by the summary judgment.

The fact that the summary judgment was reversed on appeal and then remanded for a "trial" is irrelevant to Appellant's waiver. The reversal did not reverse Appellant's waiver, because waiver was not an issue in the summary judgment proceeding. The reversal was based only on the presence of a disputed issue of material fact. On remand, the options open to a trial court should be in accordance with the mandate and opinion of the appellate court. *Riordan v. Clark,* 67 S.W.3d 610, 613 (Mo.App. W.D.2001). The opinion and mandate of our Court did not involve or address waiver, and thus the trial court would have been remiss in finding otherwise. The trial court acted accordingly in holding a jury trial so that a jury could resolve any disputed facts. The trial court also acted properly in denying Appellant's motion to strike Northwestern's affirmative defense based on failure to comply with Section 376.610 because Appellant had waived that argument *by failing to bring it up on the summary judgment proceeding.* Any other response would undermine the meaning and importance of summary judgment in our judicial system, ignore the nature of waiver, and exceed the options open to the trial court on remand in this case.

We conclude that the trial court correctly found that Appellant had waived her objection, and thus properly denied it.

For the foregoing reasons, Point III is denied.

In her fourth point, Appellant states that the trial court erred in submitting Northwestern's affirmative defense to the jury because there was no legally sufficient evidence that Northwestern relied on any misrepresentation made by Dece-

dent in that (a) Northwestern was aware that certain of the representations attributed to Decedent in the paramedical questionnaire were untrue and, as a matter of Michigan law, that knowledge foreclosed Northwestern from reasonably relying on any of the representations on the paramedical questionnaire, and (b) the Northwestern underwriter responsible for approving the issuance of the policy admitted that Northwestern relied solely on reinsurance to issue the policy.

## Standard of Review

The standard of review for a claim of insufficient evidence to support Northwestern's jury submission of fraud is set out in the following language, with citations omitted, from *Southwestern Bell Yellow Pages v. Robbins,* 865 S.W.2d 361, 365–66 (Mo.App. E.D.1993):

> In determining whether the trial court should have directed a verdict [for the moving party] or granted a judgment notwithstanding the verdict, this court must view the evidence in the light most favorable to [the adverse party] giving it the benefit of all reasonable inferences, and ignoring [the moving party's] contrary evidence except to the extent it aids [the adverse party]. Withdrawing a case from the jury is a drastic measure which should not be taken unless there is no room for reasonable minds to differ on the issues, in the exercise of a fair and impartial judgment. A jury's verdict must not be set aside unless there is a complete absence of probative facts to support the jury's verdict.

## Discussion

Appellant asserts that when Northwestern's Senior Underwriter, Jean Matthisen (Matthisen), received the paramedical questionnaire, she also had Decedent's life insurance application, which included De-

cedent's September 13, 1996 letter explaining his prior positive test for cocaine use, the record of Decedent's personal health interview taken by Northwestern in connection with his 1995 application for disability insurance, and Northwestern's other records pertaining to the 1995 disability insurance application. Based on these documents, claims Appellant, Matthisen knew that Decedent's answers to questions 33(k), 34(b) and 34(c) were incomplete and/or false, in that the documents showed that Decedent had broken his collarbone, had ingested cocaine, and had used "muscle relaxors" in 1995. Accordingly, concludes Appellant, Northwestern could not have reasonably relied on any of Decedent's representations in the paramedical questionnaire when it knew some of them were false. *See Phillips v. Smeekens,* 50 Mich.App. 693, 213 N.W.2d 862, 864 (1974).

The holding in *Phillips* is not on point to the facts in the case at bar. In *Phillips,* the defendants knew of the plaintiffs' misrepresentations. The court found they could not thereafter rescind their contract with the plaintiffs based on reliance on the misrepresentations when they had affirmatively claimed knowledge of the misrepresentations and renegotiated the contract based thereon. *Id.* at 864. In the instant case, Northwestern was wholly unaware of the extent of Decedent's misrepresentations.

■ At trial, Matthisen testified about her reliance on Decedent's representations in his application. Matthisen stated that she considered all of the information in the application, including the responses to the questions in the paramedical questionnaire, in determining whether the application would be accepted or denied based on Northwestern's guidelines. Northwestern's guidelines precluded acceptance of Decedent's application because Decedent had used cocaine in the past, and because

his liver enzymes were chronically elevated, indicating that something abnormal was happening in Decedent's liver.

However, Matthisen sent the application to several reinsurers to find out if an offer could be made under their guidelines. Business Men's Assurance Company (BMA) made an offer to reinsure, based on Decedent's history. Only because BMA offered to reinsure the policy at a higher premium classification was Northwestern willing to issue the policy at a higher premium.

Matthisen testified that had Decedent fully disclosed his drug use and consultations with physicians in response to questions 32, 34(c) and 34(d), she would have denied Decedent's application and would never have sent the application to BMA to consider reinsurance. Matthisen stated that no reinsurer would have been interested in making an offer to reinsure the policy if Decedent had fully disclosed his extensive drug use.

We find Northwestern presented substantial evidence of its factual and legal reliance on Decedent's misrepresentations in issuing the policy. Although Matthisen believed that Decedent's negative answer to question 34(b), that he had never used "marijuana, cocaine, heroin, amphetamines or hallucinogenics" in the past ten years, was false because a positive test from 1994 indicated that he had used cocaine on one occasion in the past ten years, his application was still acceptable for reinsurance even with knowledge of the truth of the matter. However, if Matthisen had known the extent of the misrepresentations Decedent made, Northwestern would have rejected the application outright, without sending it to any reinsurers, because neither would have any reinsurer accepted the application with full knowledge of Decedent's drug use.

For the foregoing reasons, Point IV is denied.

In her fifth point, Appellant argues that the trial court erred in giving Instruction No. 8 because the instruction does not conform to Missouri Approved Instruction (MAI) 32.19 in that it does not properly state the elements of Northwestern's defense.

### Standard of Review

The standard of review for this point is set forth under Point II.

### Discussion

Although copies of Instruction No. 8 and the refused instructions are included in the legal file of the record on appeal, they are not set forth in Appellant's brief. Rule 84.04(e) requires that when a point relates to refusal of an instruction, "such instruction shall be set forth in full in the argument portion of the brief." *Mitchem v. Gabbert*, 31 S.W.3d 538, 541 (Mo.App. S.D. 2000). Rule 84.04 is to be strictly enforced. *McMullin v. Borgers*, 806 S.W.2d 724, 727 (Mo.App. E.D.1991). An appellant who asserts instructional error but does not set forth the instruction in question in the argument portion of his or her brief, fails to preserve the issue for appeal. *Id.* at 727–28. An appellate court may, however, review the claim for plain error. *Mitchem*, 31 S.W.3d at 541; Rule 84.13(c). Plain error occurs only when the reviewing court deems manifest injustice or miscarriage of justice occurred. *Mitchem*, 31 S.W.3d at 541.

Under Michigan law, to prove fraudulent misrepresentation, the defendant must show: (1) the plaintiff made a material representation; (2) the representation was false; (3) when making the representation, the plaintiff knew or should have known it was false; (4) the plaintiff made the representation with the intention that the defendant would act upon it; and (5) the defen-

dant acted upon it and suffered damages as a result. *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich.App. 675, 599 N.W.2d 546, 553 (1999). Instruction No. 8 tracked each of these elements exactly.

Accordingly, there was no manifest injustice in submitting this instruction to the jury. Point V is denied.

In her sixth point, Appellant suggests the trial court erred in submitting the fraudulent misrepresentation defense to the jury because there was no legally sufficient evidence that Decedent made any representations like those described in Instruction No. 8 which could form the basis for the defense in that the only place Decedent allegedly made such representations was on the paramedical questionnaire and that document was not a proper source of evidence of a fraudulent misrepresentation by Decedent since (a) there was no evidence that the paramedical questionnaire was part of an application attached to the policy when it was issued, as required by M.C.L. Section 500.4016, (b) the life insurance application Northwestern submitted to Decedent for his signature recites that "answers and statements brought to the attention of ... the paramedical examiner are not considered information brought to the attention of the company unless stated in the application," and (c) the paramedical questionnaire was not made part of Decedent's life insurance application with his written consent, as required by M.C.L. Section 500.2216.

### Standard of Review

The standard of review for a claim of insufficient evidence to support Northwestern's jury submission of fraud is set out under Point V.

### Discussion

■ There was substantial evidence that the paramedical questionnaire was part of the application attached to the policy when it was issued. Hensley and Matthisen testified that the application contained two parts, a non-medical portion and the paramedical questionnaire. This testimony was undisputed. The two parts of the application were consecutively numbered; the non-medical portion contained questions 1 through 30, and the paramedical questionnaire contained questions 31 through 42.

Decedent signed both parts of the application. By his signature, Decedent authorized Northwestern to verify medical information in the application, and reaffirmed his medical history in the Personal Health and Status Declaration. We find that Decedent knew that the paramedical questionnaire was part of the application and his signatures gave his written confirmation of that fact.

Appellant submitted Plaintiff's Exhibit 1, which she claimed was a copy of the policy. Plaintiff's Exhibit 1 lacked the application. Matthisen testified that a policy issued by Northwestern contains the application, including the non-medical application pages and the paramedical questionnaire. Matthisen testified that Plaintiff's Exhibit 1 was incomplete for lack of the application.

Viewed in the light most favorable to Northwestern, the evidence demonstrates that Decedent's application for life insurance included the paramedical questionnaire, and Decedent was aware of that fact. Accordingly, Point VI is denied.

### Conclusion

The judgment of the trial court is affirmed.

WILLIAM H. CRANDALL, P.J., and GLENN E. NORTON, J., concur.