# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-3505

———————

Donald G. Cousineau,                    *
                                        *
        Appellee,                    *
                                        *   Appeal from the United States
    v.                                  *   District Court for the
                                        *   District of Minnesota.
Norstan, Inc.,                          *
                                        *
        Appellant.                   *

———————

Submitted: October 9, 2002

Filed: March 6, 2003

———————

Before McMILLIAN, LAY, and RILEY, Circuit Judges.

———————

RILEY, Circuit Judge.

    Norstan, Inc. (Norstan) appeals the district court's[1] grant of summary judgment in favor of Donald G. Cousineau (Cousineau). Cousineau sought damages from Norstan relating to a dispute over sales commissions. Norstan contractually agreed to pay Cousineau twenty-five percent of the gross margin on all "guaranteed revenue" from the equipment and service outsourcing contracts Cousineau negotiated for Norstan. Norstan argues two of the three sales contracts Cousineau negotiated had

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

lower "guaranteed revenue" than asserted by Cousineau, thereby reducing the commissions owed to Cousineau. We disagree and affirm.

## I.    BACKGROUND

Norstan provides telecommunication equipment and consulting and management services. Cousineau marketed outsourcing contracts for Norstan's services. In 1997, Cousineau transferred from Norstan's Montreal, Quebec, office to its Plymouth, Minnesota office. Cousineau's title became Director of Strategic Alliances; however, he continued to focus exclusively on selling outsourcing contracts. At that time, the parties negotiated a new contract (Letter Agreement) dated July 25, 1997, providing that Cousineau would receive twenty-five percent of the gross margin on all "guaranteed revenue" for the initial term of the outsourcing contracts he negotiated for Norstan. The Letter Agreement further provides that any changes made to the outsourcing contracts within ninety days of execution are included in the final commission calculation.

Cousineau negotiated three outsourcing contracts before leaving Norstan. Cousineau alleged Norstan breached the Letter Agreement by failing to pay him all the commissions owed on two of the contracts: (1) the Grandview contract, and (2) the AmerUs contract. Cousineau filed claims for breach of contract, unjust enrichment, and failure to pay wages promptly in violation of Minn. Stat. § 181.14 (1998). Norstan counterclaimed, contending Cousineau was overpaid and had misrepresented the commissions and information to both Grandview and AmerUs. Specifically, Norstan alleged fraud, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and breach of contract.

The district court granted Cousineau summary judgment on his breach of contract and section 181.14 claims, while dismissing Cousineau's unjust enrichment claim and Norstan's counterclaims. The district court awarded Cousineau

$699,817.85, which included unpaid commissions, prejudgment interest, penalties, attorney fees and costs.

On appeal, Norstan contends the district court erred in granting Cousineau summary judgment because (1) a modification to the Grandview contract reduced the amount of commissions owed, and (2) the AmerUs contract did not contain a required minimum number of long distance minutes, which reduced the commissions sought by Cousineau. Norstan also argues the district court erred in dismissing Norstan's counterclaims and in awarding Cousineau prejudgment interest, penalties, attorney fees and costs.

## II.    DISCUSSION

We review the grant or denial of summary judgment de novo. See Calder v. TCI Cablevision of Mo., Inc., 298 F.3d 723, 728 (8th Cir. 2002). "Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).

### A.    Grandview Contract

Over the course of several months, Cousineau negotiated a contract with Grandview for telecommunication services and equipment. The primary contact person from Grandview with whom he negotiated was Martina Clemens (Clemens). Clemens was a vice president at Grandview, the sister-in-law of Grandview's president and CEO, and responsible for Grandview's contract negotiations with Norstan. At the conclusion of the negotiations, the contract contained a "termination for convenience" clause, whereby Grandview could terminate the contract at the end of two years, without cause, by giving six months notice. In that event, Grandview would be subject to a specified amount of "stranded costs." Otherwise, the contract contemplated a service agreement for six years.

After executing the contract on June 11, 1998, Cousineau submitted his commission request based on a calculation of the revenue for the full six years of the contract. However, Norstan determined the "guaranteed revenue" based on only two years because of the termination clause. Cousineau then sought and received permission from Norstan to negotiate with Grandview to eliminate the termination clause from the contract. Cousineau talked to Clemens, and Clemens agreed to eliminate the termination clause. On August 13, 1998, Clemens initialed a single redlined page from the contract, which contained the deleted termination clause. On August 25, 1998, Jim Guthrie, Cousineau's supervisor, also initialed the redlined page, after speaking to Clemens, who confirmed she intended to delete the termination clause in exchange for other contract provisions. Norstan suggests Cousineau and Clemens actually negotiated some additional changes at the same time, which never took effect and were not part of the written redlined page. In mid-September 1998, Norstan understood Grandview did not want the two-year termination for convenience clause in the contract. However, by September 24, 1998, Grandview sought to reinstate the termination clause, and Norstan decided that it was "in the best interests of both parties that the clause for convenience be kept in the contract."

Did the August actions constitute an effective modification of the contract for purposes of calculating Cousineau's commissions, as a matter of law? Cousineau argues the redlined page of the contract is unambiguous and the changes speak for themselves; therefore, no extrinsic evidence need be considered. Norstan contends the modification was ineffective because it violated the contract's modification procedure. Cousineau argues an executive from each company responsible for negotiating the contract initialed and dated the appropriate portion of the redlined page, thereby effecting a binding modification. Cousineau further replies that the modification procedure was not utilized, in this instance, because that procedure required use of a committee, which had not yet been formed, and later modifications were made without using a committee.

"We review the district court's interpretation of the contract and the grant of summary judgment de novo. ‹Unambiguous contract language must be construed according to its plain and ordinary meaning.'" Mapes v. MTR Gaming Group, Inc., 299 F.3d 706, 707 (8th Cir. 2002) (citing Minnesota state law) (internal citations omitted). "We review de novo the trial court's determination that the contracts were unambiguous." Winthrop Res. Corp. v. Stanley Works, 259 F.3d 901, 903-04 (8th Cir. 2001) (internal citations omitted).

Norstan argues the contract is ambiguous either because the redlined page is itself ambiguous, or it is ambiguous whether the redlined page even belongs in the contract. Norstan contends the parties to the contract – Norstan and Grandview – do not consider that the contract was modified by the redlined page. According to Norstan, the redlined page was merely a single page containing the termination clause and nowhere stated it was a modification to the Norstan-Grandview contract.

Contract interpretation is determined as a matter of law. See Lake Superior Paper Indus. v. Minnesota, 624 N.W.2d 254, 258 (Minn. 2001). Contract construction and effect are also questions of law, unless the contract terms are ambiguous. See generally Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). Ambiguity arises when the language is subject to more than one reasonable interpretation. Id. Finally, whether particular facts amount to modification of a contract is a question of law, while whether such facts are proved is a question of fact. See Brodsky v. Brodsky, 639 N.W.2d 386, 392 (Minn. Ct. App. 2002); see also 17A C.J.S. *Contracts* §§ 407-415 (1999)).

"Whether a pre-existing agreement has been modified depends on the parties' objective manifestations, not their subjective understanding." Brodsky, 639 N.W.2d

at 392. In this case there is no dispute about the facts.[2] The parties agree the redlined page is a copy of the page from the contract containing the "termination for convenience" clause. Clemens for Grandview initialed the redlined page, containing a stricken version of the termination clause. Guthrie for Norstan also initialed the page. We agree with the district court that, as a matter of law, the redlined, initialed page constitutes a modification of the contract.

However, "[p]arol evidence may be considered 'to explain the circumstances surrounding the execution of the documents.'" Poser v. Abel, 510 N.W.2d 224, 227 (Minn. Ct. App. 1994) (quoting Anderson v. Kammeier, 262 N.W.2d 366, 370 n.2 (Minn. 1977) (contracts in several writings relating to the same transaction will be construed with reference to each other), and citing Doyle v. Wohlrabe, 66 N.W.2d 757, 762 (Minn. 1954) (parol evidence explaining time, place, parties, and other circumstances may be received to aid in interpreting contract terms); 2 Arthur L. Corbin, *Corbin on Contracts* § 515 (1950) (oral testimony admissible to explain relationship between memoranda)). The existence of a contract modification is bolstered by the subjective intent and conduct of the parties. See, e.g., Fredrich v. Independent Sch. Dist. No. 720, 465 N.W.2d 692, 695-96 (Minn. Ct. App. 1991) (holding the most probative evidence of intent is the subsequent action of the parties to the contract).

Clemens testified in her deposition that when she initialed the single page, she intended the deletion of the clause to be binding on both Grandview and Norstan. Clemens admitted a representative from Norstan called her, shortly after initialing the page, to discuss, "[t]he fact that the convenience clause was deleted." Guthrie testified that he called Clemens to confirm her desire to remove the clause and, when

---

[2]Cousineau's brief on appeal states: "Neither party alleged [in the district court] that there were any factual disputes and both sides asked the district court to examine the Letter Agreement, Grandview contract and AmerUs contract and determine if Cousineau was owed additional commissions."

Guthrie initialed the redlined page for Norstan, he intended to remove the "termination for convenience" clause from the contract. The conduct and intent of the parties, contemporaneous with their signing the redlined page, also supports the conclusion that the modification occurred.

Norstan argues the modification was ineffective because the parties failed to follow the modification procedure provided for in the contract, including the use of a committee. However, a contract's method of modification is not an exclusive method, because the parties can waive that method, or any other right under a contract.[3] See 10 *Williston on Contracts* § 29:42 (4th ed. 1999); 17A C.J.S. *Contracts* § 409 (1999). A modification may be effected by an explicit agreement to modify. Id.

In a final incongruity, Norstan contends that since there is no credible evidence a modification occurred, there is no disputed genuine issue of material fact and summary judgment should be entered in its favor. Alternatively, Norstan asserts there is a material issue of fact about whether the modification occurred, and the matter should proceed to trial. We disagree, finding (1) no disputed genuine issue of material fact, and (2) a contract modification as a matter of law.

---

[3]    It is a fundamental principle of law that one in possession of a right, conferred by law or contract, and who has full knowledge of material facts who does, or fails to do, something which is inconsistent with the existence of his right or of his intention to rely upon same, waives such right and is precluded from thereafter asserting same.

Eveloff v. Cram, 161 S.W.2d 36, 39 (Mo. Ct. App. 1942) (citation omitted); see Jones Store Co. v. Dean, 56 F.2d 110, 114 (8th Cir. 1932) (quoting *Bishop on Contracts* § 792 (2d Enl. Ed.)); Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co., 152 N.W. 650, 651-52 (Minn. 1915).

In this case the contract itself and the undisputed conduct of the parties support the conclusion the contract was modified. If the parties later disavowed the modification, that would not change the commission calculation for Cousineau, because the disavowal occurred over ninety days after the execution of the contract. Since the disavowal occurred after the contractual time period included for calculation of the commission, Cousineau is entitled to summary judgment on the Norstan-Grandview contract.

### B.     AmerUs Contract

Cousineau, on Norstan's behalf, negotiated an outsourcing contract with AmerUs. The negotiation process lasted several months. One point of contention was the amount of long distance services. Sometime after the execution of the contract in September 1998, Norstan realized it would be unable to provide long distance services to AmerUs without the added expense of becoming a licensed re-seller of long distance services in Iowa. The Norstan-AmerUs contract was renegotiated in early 1999 to exclude the long distance services. Cousineau and Norstan dispute the amount of commissions owed on the September 1998 contract.

Norstan contends the 1998 contract provided for billing based on actual usage of long distance services and, therefore, did not require AmerUs to purchase a minimum number of minutes. By contrast, Cousineau maintains the contract unambiguously guaranteed over 56,000,000 minutes of long distance service over the life of the contract. The following language appears in Schedule E of the contract:

> <u>Network rates and prices</u> are based on a total guaranteed gross usage of 56,923,026 minutes over the life of the agreement. Network annual rates per minute are guaranteed for the life of the Agreement. If actual usage is less in any one year than the minutes represented above, the rate for that year will be readjusted to equal the rate of the previous year. This adjustment would be made annually at the Agreement anniversary

date. Network services fees will be billed monthly based on actual volumes/minutes used.

The September 1998 contract further specified the number of minutes for use by year. An uncontested affidavit submitted by an AmerUs representative attested that the number of specified minutes in the contract was hotly negotiated and was actually reduced from 90,000,000 minutes. Additionally, the AmerUs representative stated he believed the number represented a guaranteed usage amount.

Norstan, on the other hand, argues the district court's "interpretation" creates an absurd result–Norstan would have to sue AmerUs for the fee on unused minutes at the end of the contract. We disagree, because the result is exactly what the parties bargained for by the clear and unambiguous terms of the contract.

Norstan also contends that because Norstan was unable in the long run to deliver the long distance services (because state law forbade it without a particular cost-prohibitive license), Cousineau should not be compensated. However, Norstan did not discover its inability to deliver the long distance services until after the ninety-day period allowed by the Letter Agreement within which changes to the contract could affect Cousineau's commission. Because no genuine issue of material fact exists and the contract is unambiguous, Cousineau is entitled to judgment as a matter of law on his claim for commissions based on the 1998 Norstan-AmerUs contract.

## C.    Norstan's Motion for Summary Judgment

Norstan's asserted counterclaims for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and breach of contract. These claims were based on Cousineau's submission of the commission calculations discussed above, and his alleged unsubstantiated and misleading statements and "promises" to Grandview and AmerUs

regarding certain costs and fees. After carefully reviewing the record de novo, and for the reasons stated above, we conclude the district court properly granted summary judgment, because Norstan owed the commissions to Cousineau, and Norstan cannot, therefore, prove essential elements of its counterclaims. See 8th Cir. R. 47B.

### D. Interest, Penalties, Fees and Costs

The district court's decision hinges on its interpretation of a Minnesota statute. We review questions of state law de novo. American Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 590 (8th Cir. 2002). The district court awarded Cousineau $91,780.50 in attorney fees and $36,885.94 in penalties pursuant to Minn. Stat. §§ 181.14 and 181.171, respectively. The district court also awarded prejudgment interest from the dates Norstan owed the commission. Each of these awards is specifically allowed, or required, by statute.

Norstan's failure to pay Cousineau the disputed commissions violated Minnesota law. After an employee resigns, the "commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment." Minn. Stat. § 181.14, subd. 1(a). An employer who violates section 181.14 "is liable to the aggrieved party for the civil penalties or damages provided for in the section violated. An employer who is found to have violated the above sections shall also be liable for compensatory damages and other appropriate relief . . . ." Minn. Stat. § 181.171, subd. 1. Furthermore, "the court shall order an employer who is found to have committed a violation to pay to the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees." Id., subd. 3 (emphasis added).

Norstan argues the safe harbor provision of the statute shields it from an adverse award of attorney fees and penalties, because Norstan paid Cousineau partial payments of the commissions due on the Grandview and AmerUs contracts. The safe harbor provision applies only when the employer tenders a good faith portion of the

-10-

amounts due and owing and the employee does not recover a greater sum.[4]  Here, Cousineau recovered a greater sum than initially tendered by Norstan.  Therefore, the safe harbor provision does not shield Norstan from an otherwise proper attorney fee or penalty award.  Attorney fees are specifically required under section 181.171, subd. 3.  Statutory penalties are required by section 181.14, subd. 2, for any earned commissions not paid within 24 hours of a demand made by the employee.

Norstan also argues the district court erred in calculating the prejudgment interest it awarded Cousineau.  Specifically, Norstan contends that since the amount of commissions owed was not readily ascertainable, the appropriate date to commence the accumulation of interest is March, 4, 1999, rather than when the claim accrued.  The district court did not clearly err in determining the amount of commissions owed was "readily ascertainable by reference to objective standards." See Ventura v. Titan Sports, Inc., 65 F.3d 725, 735 (8th Cir. 1995).  Therefore, prejudgment interest began to accrue when Cousineau's claim arose.  See ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 556 (Minn. 1977).  The district court did not err in awarding interest, penalties, fees, and costs to Cousineau under the Minnesota statutes, therefore we affirm.

## III.   CONCLUSION

We affirm the district court in all respects.

---

[4]      If the employer disputes the amount of . . . commissions claimed by the employee . . . and the employer makes a legal tender of the amount which the employer in good faith claims to be due, the employer shall not be liable for any sum greater than the amount so tendered . . . unless, . . . the employee recovers a greater sum than the amount so tendered with interest thereon; and if, in the suit, the employee [recovers a greater sum than the amount so tendered,] . . . the cost [of the suit] . . . shall be paid by the employer.

Minn. Stat. § 181.14, subd. 3.

-11-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.